STANLEY U. ROBINSON, THIRD *vs.* DEPARTMENT OF PUBLIC
UTILITIES & another.[1]

Suffolk. October 10, 1991. - April 14, 1992.

Present: LIACOS, C.J., WILKINS, O'CONNOR, & GREANEY, JJ.

*Department of Public Utilities. Telephone Company. Practice, Civil*, Review of order of Department of Public Utilities.

Judicial review of an order of the Department of Public Utilities was available only under G. L. c. 25, § 5, and was limited to questions of law. [461-462]

The Department of Public Utilities acted within its discretion in promptly issuing an order delaying implementation of a prior order, pending departmental proceedings to correct an oversight; moreover, the order delaying implementation was not a "decision" required by G. L. c. 30A, § 11 (8), to be in writing or to be accompanied by a statement of reasons. [462-463]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on October 8, 1982.

The case was heard by *Lynch, J.*

*Stanley U. Robinson, III*, pro se.

*Thomas A. Barnico*, Assistant Attorney General, for the defendant.

*Barbara Anne Sousa* for the intervener.

O'CONNOR, J. This action was commenced on October 8, 1982, in the Supreme Judicial Court for Suffolk County seeking judicial review of an order dated August 27, 1982, by the Department of Public Utilities (department) allowing a restructuring of certain New England Telephone & Telegraph Company (company) rates. Six days later, the petitioner, Robinson, challenged the validity of an unwritten de-

---

[1]New England Telephone & Telegraph Company, intervener.

cision by the department to delay implementation of that
order until it issued a second, amended order on October 19,
1982, which clarified an ambiguity in the first order.[2] At the
time the petition for review was heard by a single justice, the
amended order had taken effect. The single justice dismissed
the action, and Robinson appealed to the full court.[3] Robin-
son concedes that his challenge to the validity of the first or-
der is moot, but he seeks enforcement of the rates approved
in that order for the period between the two orders. He con-
tends that the department's delay in implementing the first
order was invalid and that the company should be required
to send corrected bills to its 1982 metropolitan service sub-
scribers. For the reasons set forth below, we affirm the deci-
sion of the single justice.

In 1981, the department ordered the company to submit a
proposal to restructure its "metropolitan service" zones to
provide a "better correlation between the rates to be charged
in each zone and the number of main stations which may be
reached by subscribers in each zone." At that time, metro-
politan service was an optional flat-rate, unlimited calling
service offered to one-party residence ·subscribers in ex-
changes within twenty rate miles of the Boston central ex-
change. See *New England Tel. & Tel. Co.* v. *Department of
Pub. Util.*, 371 Mass. 67, 85 (1976). In accordance with the
department's order, the company filed a restructuring propo-
sal on April 23, 1981. The department docketed this filing as
"D.P.U. 699," and allowed Robinson to intervene pro se.
During the summer and fall of 1981, discussions concerning
the company's proposal were held between the department,
company representatives, and Robinson. Robinson submitted
a different restructuring plan, and two other plans were also

---

[2] Robinson filed a "Motion for Enforcement," requesting the single jus-
tice to order the department to "take all appropriate steps to enforce its
written final order in DPU 699 & 1041, dated August 27, 1982, until such
time as the order is legally superseded."

[3] Robinson filed an appeal of the single justice's decision on December
21, 1982. The filing of the record by the department was not complete
until December 15, 1988.

discussed. The company agreed to conduct a comparison of the four restructuring plans, and subsequently submitted a report to the department on November 6, 1981, indicating that it preferred its original proposal. In support of its plan, the company filed tariff revisions for its metropolitan service on January 29, 1982. This filing was docketed as "D.P.U. 1041." On February 28, 1982, the department suspended the filing for the full six months allowed by statute, G. L. c. 25, § 18 (1980 ed.). Subsequently, during the course of the hearings on the tariff revisions, the department allowed the company's motion to consolidate D.P.U. 699 and D.P.U. 1041, which enabled the department to take notice of the entire record of both dockets in making its decision. Public hearings on the metropolitan service restructuring plan and tariff revisions were held by the department in July and early August, 1982.

Meanwhile, on March 29, 1982, the department had issued "Order 859," allowing most of the company service rates, including metropolitan service rates, to be increased by 1.3 per cent. The increase went into effect on April 16, 1982. On August 1, 1982, the company began its annual reclassification of certain exchanges, allowed under the tariff then in effect, which also resulted in increases in the local monthly rates for thirteen exchanges.[4]

On August 27, 1982, the department issued the first order approving the company's metropolitan service restructuring plan, D.P.U. 699, and its tariff revisions, D.P.U. 1041, which had been filed prior to the two rate increases just discussed. This first order stated that the tariff revisions, D.P.U. 1041, would "become effective with billing cycles commencing on or after the date of this Order." It failed to mention the rate

---

[4]As D.P.U. explains, "[f]or purposes of determining monthly exchange rates for basic main telephone exchange service, exchanges are classified into rate groups by class of service according to the number of main exchange lines in the primary calling area (PCA). The tariff provides for the reclassification of exchanges to the applicable higher/lower rate group when the total exchange lines in the PCA exceed or fall below the upper/lower limits of the rate group for two consecutive annual study periods."

increases already in effect pursuant to Order 859 and the exchange reclassifications. Before instituting the approved tariff revisions, the company immediately filed with the department a "Motion for Clarification or Reconsideration" of this first order. Robinson filed a motion in opposition to the company's motion. Without a written order, the department granted permission to delay the implementation of the first order. It then held a hearing on these two motions on September 15, 1982, and issued a second, amended order on October 19, 1982. In this amended order the department acknowledged that, through oversight, its first order had failed to require adjustments in the company's tariff revisions to reflect the increases that had taken effect since the revisions were originally filed in January, 1982. The amended order required the company to file updated tariff revisions within seven days, based on the rates in effect at that time, which included the two increases.

Robinson purported to file his petition for review in this court (appeal) pursuant to three statutes. The first of these, G. L. c. 211, § 3 (1990 ed.), grants this court general superintendency power over all courts of inferior jurisdiction. This action does not involve a decision or order of a court of inferior jurisdiction. Therefore, c. 211, § 3, provides no ground for Robinson's appeal.

Robinson also sought review under the State Administrative Procedure Act, G. L. c. 30A, § 14 (1990 ed.), which provides for appeals to the Superior Court from final decisions of agencies in adjudicatory proceedings, except where a statutory form of judicial review or appeal is otherwise provided. In the case of the department, G. L. c. 25, § 5 (1990 ed.), governs review of its decisions. Therefore Robinson could not bring an appeal under c. 30A, § 14.

The third statute under which Robinson sought review is G. L. c. 25, § 5, which provides, in relevant part: "An appeal as to matters of law from any final decision, order or ruling of the commission may be taken to the supreme judicial court by an aggrieved party in interest by the filing of a written petition praying that the order of the commission be

modified or set aside in whole or in part." Pursuant to this statute, we have said that the reviewing court "cannot review or revise pure findings of fact and can deal with rulings or orders of the department only to the extent that they are shown to be erroneous in law." *Lowell Gas Light Co. v. Department of Pub. Util.*, 319 Mass. 46, 47 (1946). The parties do not dispute that the department complied fully with the procedural requirements of c. 30A in fashioning the first order and the amended order, or that the amended order was lawful. The sole issue we must address is Robinson's contention that the department's oral order delaying implementation of the rates allowed in the first order was unlawful and in violation of the provisions of c. 30A, § 11 (1) and (8) (1990 ed.).

General Laws c. 30A, § 11 (1), provides that agencies must give reasonable notice and a hearing to all parties when conducting an adjudicatory proceeding. Section 11 (8) of c. 30A provides that "[e]very agency decision shall be in writing or stated in the record," and that every decision must be accompanied by a statement of reasons for the decision. The department's oral order delaying implementation of the rate allowed in the first order, which was prompted by the department's realization that it had failed to take into account the rate increases already in effect pursuant to Order 859, was clearly within its discretion. See *Fryer v. Department of Pub. Util.*, 374 Mass. 685, 691 (1978) (department's decision not to suspend already granted rate increase during later proceedings was within its discretion). Furthermore, the order delaying implementation, a ministerial act, was not a "decision" within the meaning of G. L. c. 30A, § 11 (8). Therefore, it was not required to be in writing or to be accompanied by a statement of reasons. In addition, the order delaying implementation of the first order was followed promptly by a department hearing on the company's motion for clarification and reconsideration and Robinson's opposition. The rights of the parties were fully protected by the procedural steps taken by the department in formulating its first and second orders.

We will not disturb the decision of a single justice absent clear error of law or abuse of discretion. *Fogarty* v. *Commonwealth*, 406 Mass. 103, 106 (1989). The single justice correctly denied Robinson's petition for review of the validity of the first order on the ground of mootness because by the time it was argued, the first order had been legally superseded by the second order, and Robinson was not entitled to relief on the basis of his "Motion for Enforcement."

*Judgment affirmed.*