Cacicio *v.* Secretary of Public Safety.

DAVID CACICIO & others[1] *vs.* SECRETARY OF PUBLIC SAFETY
& others.[2]

Suffolk. April 3, 1996. - May 29, 1996.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Administrative Law,* Regulations, Judicial review. *Regulation. Telephone.*
*Constitutional Law,* Imprisonment, Search and seizure, Assistance of
counsel, Freedom of speech and press. *Imprisonment,* Enforcement of
discipline, Access to courts. *Search and Seizure,* Incarceration.

A telephone company that provided telecommunication services under
contract to the Department of Correction did not thereby become a
government actor and, in an action brought by State prison inmates al-
leging violations of their constitutional rights by reason of certain regula-
tions pertaining to their use of the prison telephone system, the telephone
company was entitled to summary judgment in its favor. [769]

Regulations promulgated by the Department of Correction limiting and
subjecting to monitoring all telephone calls made by State prison inmates
are rationally related to the legitimate goal of improving security of the
Massachusetts correction system. [769-772]

State prison inmates do not have a reasonable expectation of privacy in
their telephone calls and the State regulations mandating the monitoring
and recording of inmate calls by prison officials in the interests of secu-
rity do not violate art. 14 of the Declaration of Rights of the Mas-
sachusetts Constitution. [772-773]

Where State prison inmates have direct access to institutional law libraries
or legal assistance as well as access to mail and personal visits from at-
torneys, regulations of the Department of Correction limiting inmates'
unmonitored telephone access to no more than five separate attorneys
and to three legal services organizations during certain time periods and
barring toll-free calls do not violate the inmates' right to effective assis-
tance of counsel or deprive them of access to courts. [773-774]

Regulations of the Department of Correction that mandate limitations on
and monitoring of inmates' telephone conversations and that are
rationally related to the legitimate goal of protecting prison order and

---

[1]Christopher Masonoff, Sr.; Mike Adams; Jeff Wills; Lee Underwood;
and Anthony Christallo.

[2]Commissioner of Correction; superintendent of the Massachusetts Cor-
rectional Institution, Norfolk; New England Telephone and Telegraph
Company and its chief executive officer (NET) (in their amended com-
plaint, the plaintiffs mistakenly referred to NET as NYNEX Telecom-
munications).

security do not violate the free speech and expression protections of art. 16 of the Declaration of Rights of the Massachusetts Constitution. [774] On the record presented in a civil action and without a hearing, a Superior Court judge correctly granted summary judgment in favor of the Department of Correction on inmates' claims of facial invalidity of certain regulations that mandated the limiting and monitoring of inmates' telephone calls. [774-775]

CIVIL ACTION commenced in the Superior Court Department on May 10, 1994.

Motions for an evidentiary hearing and for an extension of time to respond to the defendants' motion for summary judgment were heard by *Hiller B. Zobel*, J., and a motion for summary judgment was considered by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

This case was submitted on briefs.

*Robert J. Munnelly, Jr., & Karen J. Laufer*, Assistant Attorneys General, for Secretary of Public Safety.

*Thomas R. Teehan* for New England Telephone and Telegraph Company.

*David Cacicio* & others, pro se.

GREANEY, J. This case concerns facial challenges to new regulations (regulations) of the Department of Correction (department) which permit the monitoring and recording of inmates' telephone calls. The plaintiffs, six inmates at the Massachusetts Correctional Institution, Norfolk, filed this pro se action in the Superior Court, seeking declaratory and injunctive relief against the Secretary of Public Safety and correction department officials (collectively, government defendants), as well as against New England Telephone and Telegraph Company, and its chief executive officer (NET). The plaintiffs brought their action on behalf of themselves and a putative class of similarly situated Massachusetts inmates. In their amended complaint, the plaintiffs challenge the facial validity of the regulations, alleging that the regulations violate several of their Federal and State constitutional rights, as well as Federal and State statutory and regulatory

provisions.[3] A judge in the Superior Court ordered consolidation of all actions challenging the regulations.[4] The judge also denied the plaintiffs' motion for class certification.

The plaintiffs subsequently moved for an evidentiary hearing to "substantiate there is a lesser restrictive means available and currently in place to achieve the same end results sought by the various defendants." The government defendants and NET each moved to dismiss, see Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), or, in the alternative, for summary judgment, see Mass. R. Civ. P. 56 (b), 365 Mass. 824 (1974). The plaintiffs in turn filed a motion seeking a thirty-day extension to respond to the defendants' dispositive motions in the event that the court did not grant the plaintiffs' pending motion for an evidentiary hearing.

A second judge in the Superior Court denied the plaintiffs' motions for an evidentiary hearing and for an extension of time and entered an order dismissing the plaintiffs' amended complaint.[5] Judgment entered against the plaintiffs declaring that "[t]he defts show [*sic*] this case concerns a matter confided to the discretion of the corrections officials." The plaintiffs appealed, and we transferred the case to this court on our own motion. We conclude that the defendants were entitled to summary judgment, and therefore affirm the judgment.

The undisputed facts disclose the following. On April 8,

---

[3]The amended complaint alleges that the regulations violate the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; arts. 11, 12, 14, and 16, as amended, of the Declaration of Rights of the Massachusetts Constitution; the Privacy Act, G. L. c. 214, § 1B (1994 ed.); the Criminal Offender Record Information Act, G. L. c. 6, §§ 167-178 (1994 ed.); the Consumer Protection Act, G. L. c. 93A (1994 ed.); the Massachusetts Administrative Procedure Act, G. L. c. 30A (1994); privacy and confidentiality regulations codified at 801 Code Mass. Regs. § 3.00 (1993); the Federal Communications Act of 1934, 47 U.S.C. §§ 201-202 (1994); the powers and duties of the department, G. L. c. 124, § 1 (*q*) (1994 ed.); and the correctional institutions of the Commonwealth, G. L. c. 125 (1994 ed.).

[4]There are at least three other pending complaints challenging the regulations in the Superior Court in which the defendants' motions to dismiss or for summary judgment have not been decided.

[5]Although the judge ordered dismissal of the plaintiffs' action, it is clear that the judge considered affidavits and other materials in deciding the motions filed by the government defendants and NET. Accordingly, we treat his order as one granting summary judgment. See *McCarthy* v. *Oak Bluffs*, 419 Mass. 227, 229 (1994).

1994, the department promulgated new regulations at 103 Code Mass. Regs. §§ 482.01-482.14, governing inmate access to, and use of, telephones in the Massachusetts correctional system. Pursuant to these regulations, the department entered into a contract with NET for an automated operator telephone system that has the capability to record all or some inmate calls.

The regulations provide that all inmate calls, except those made to attorneys, are subject to monitoring and recording by department officials. All inmates who use a telephone first must receive a personal identification number (PIN). The regulations provide that inmates who accept a PIN and use the telephone have consented to the monitoring and recording of telephone conversations with other than an attorney.

The regulations limit inmates to a total of fifteen telephone numbers to which they may place calls. Five of these numbers are reserved for attorneys.[6] All fifteen numbers must be approved by the correctional institution and then programmed to the inmate's PIN.[7] Inmates also are authorized to telephone Massachusetts Correctional Legal Services, Harvard Prisoner Legal Assistance Project, and Northeastern University Legal Assistance.

Inmates are limited to one-way collect calls. An automated operator system informs call recipients that the call is originating from an inmate at a Massachusetts correctional institution, that calls to persons other than attorneys are recorded, and that any attempt to access a three-party line or conference call will cause the system to disconnect the call immediately. The system recognizes a "positive call acceptance." Calls to 411, 800, 900, 550, 976, and other multiple long distance carriers are prohibited. Superintendents at each institution are to establish policies on telephone use issues, including times when telephones are available to inmates and limits on durations of calls. Inmates, with some limitations,

---

[6]Department officials established the fifteen-number limit as a means of controlling costs and administrative burdens. They established the five attorney telephone number limit to help ensure that unmonitored calls are legitimate attorney-client communications.

[7]Each institution must allow inmates to submit new numbers or change authorized numbers at least quarterly. Moreover, inmates may make emergency changes with the approval of the superintendent of the correctional institution where they are incarcerated.

also are permitted to communicate with persons outside of correctional facilities through the mail. See 103 Code Mass. Regs. § 481.00 (1996). They also are permitted to meet privately with attorneys and other visitors during regular visitation hours. See 103 Code Mass. Regs. § 483.00 (1993).

Most Massachusetts correctional institutions maintain collections of legal materials, to which all inmates within the institution are allowed access. 103 Code Mass. Regs. § 478.11 (2), (3) (1993). Inmates in institutions without law libraries may request transportation to an institution with a law library to conduct legal research. 103 Code Mass. Regs. § 478.11 (3). Where appropriate, superintendents may provide access to legal assistance in lieu of law library access. Id.

The department promulgated the telephone regulations to prevent inmates from using the telephone system for illegal activities such as planning escapes, organizing drug trafficking, orchestration of criminal activities, solicitations to murder, and fraudulent use of third-party calls or telephone credit cards. The regulations also were designed to prevent inmates from using telephones to harass members of the media, public officials, and victims, especially those who have protective orders granted under G. L. c. 209A (1994 ed.) against particular inmates.[8] On appeal, the plaintiffs argue that the regulations violate their right to be free from unreasonable searches and seizures as protected by art. 14 of the Declaration of Rights of the Massachusetts Constitution; their right of access to the courts and of effective assistance of counsel as protected by the First, Fourteenth, and Sixth Amendments to

[8]The uncontested affidavit of the assistant deputy commissioner of secure facilities for the department states the following: "[The] new Regulations are necessary to combat an increasing number of problems with the prior inmate telephone system. Inmates at facilities using the prior inmate telephone system, were involved in: the introduction of narcotics into correctional facilities; illegal drug trade in the community; conducting and orchestrating criminal enterprise; solicitations to murder; solicitations to murder law enforcement officers; harassment of victims and their family; harassment of media, politicians, and public officials as well as the general public; fraudulent purchases of merchandise and goods, fraudulent use of third party calls; fraudulent use of calling cards; illegally accessing long distance calls without making payment; violating court orders; violating restraining orders, perpetration of harassment and threats of domestic violence as well as escape plots. In one particularly egregious example of toll call fraud, an inmate or inmates were able to charge more than 271 collect calls to a single business in one month."

the United States Constitution; and their right to freedom of speech and expression as protected by art. 16 of the Declaration of Rights, as amended by art. 77 of the Amendments.[9]

1. *NET.* NET was entitled to summary judgment. The only allegation in the amended complaint pertinent to NET asserted that NET had entered into a contract with one or more of the government defendants to supply telecommunications services "including, but not limited to software which will allow the other Defendants to implement 103 CMR 482." The constitutional provisions at issue call for, or create prohibitions on, government action. NET is not a government actor, and NET's provision of telephone services to correctional institutions does not convert it into a government actor. See *Rendell-Baker* v. *Kohn,* 457 U.S. 830, 841 (1982).

2. *Government defendants.* The standard of review governing a facial challenge to a regulation promulgated by a government agency is highly deferential. A regulation "has the force of law and must be accorded all the deference due a statute." *Borden, Inc.* v. *Commissioner of Pub. Health,* 388 Mass. 707, 723, cert. denied, 464 U.S. 936 (1983). In reviewing a regulation, a court "[cannot] substitute [its] judgment as to the need for a regulation, or the propriety of the means chosen to implement the statutory goals, so long as the regulation is rationally related to those goals." *American Family Life Assurance Co.* v. *Commissioner of Ins.,* 388 Mass. 468, 477, cert. denied, 464 U.S. 850 (1983).

This deference is particularly pronounced in the context of regulations enacted by correction officials that concern institutional security issues. See *Bell* v. *Wolfish,* 441 U.S. 520, 547 (1979) (prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal

---

[9]The various other claims which the plaintiffs stated in their amended complaint, but have not raised on appeal, are deemed waived. Additionally, the plaintiffs assert two new claims on appeal that were not raised in the Superior Court, namely, that the regulations violate the Federal Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb et seq. (1994), and the Massachusetts wiretap statute, G. L. c. 272, § 99 (1994 ed.). Since these claims were not raised in the trial court, they are not entitled to consideration on appeal. *Commissioner of Correction* v. *McCabe,* 410 Mass. 847, 850 n.7 (1991). Finally, the plaintiffs cite to the Federal Wiretap Act, 18 U.S.C. §§ 2510 et seq. (1994), but do not advance any argument in their brief that the regulations violate this act. We need not consider it.

order and discipline"); *Kenney* v. *Commissioner of Correction*, 393 Mass. 28, 35 (1984) (recognizing that operation of a prison is an extraordinarily difficult task and prison officials, therefore, must have broad discretion in the administration of prison affairs).

In order to allow prison officials, rather than the courts, to make decisions governing prison operations, the United States Supreme Court has indicated that a regulation which impinges on an inmate's constitutional rights is valid "if it is reasonably related to legitimate penological interests." *Turner* v. *Safley*, 482 U.S. 78, 89 (1987).[10] Four considerations were identified in the *Turner* decision as relevant to that inquiry: (1) Is there a valid, rational connection between the regulation and the governmental interest put forward to justify it, and is the governmental interest legitimate and neutral; (2) do alternative means of exercising the challenged right remain open to inmates; (3) will accommodating the challenged right have a significant "ripple effect" on guards, other inmates, and the allocation of prison resources in general; and (4) does an alternative to the regulation exist which would fully accommodate the inmates' rights at de minimis cost to valid penological interests? *Turner* v. *Safley, supra* at 89-91. The regulations satisfy these considerations.

First, the department enacted the regulations for the legitimate purpose of improving the security of the Massachusetts correctional system, and they logically advance that goal. For example, monitoring and recording inmates' calls to other than attorneys enable prison officials to identify improper use of telephone lines and thereby serve as a deterrent against improper use. See note 8, *supra*. In addition, requiring inmates to make collect calls reduces the need for currency in prisons which decreases the risk of currency being used for transactions in illicit goods, as well as the risk of stronger inmates

[10]In *Bell* v. *Wolfish*, 441 U.S. 520, 545-547 (1979), the Supreme Court described the authority of prison officials more broadly in these terms: "[S]imply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations. . . . The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights. . . . Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee . . . the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security."

coercing weaker inmates to gain access to currency.[11] Limiting the number of attorneys inmates may call helps to ensure that nonrecorded calls are made for legitimate attorney-client communications. The regulations also are content neutral.

Second, inmates have alternative means of exercising their rights. For example, through the mail, visits, and prison law libraries, inmates have sufficient nontelephonic means of gaining access to the courts and receiving effective assistance of counsel. Similarly, inmates have significant opportunities to exercise their art. 16 free speech and expression rights by communicating with attorneys and others by mail and in personal visits.

Third, invalidating or limiting the regulations would have a substantial effect on the allocation of prison resources. For example, if the correction officials could not rely on the automated message and recording system to identify and deter criminal use of the telephones, they would have to devote scarce manpower and resources to developing and administering alternative methods of maintaining prison security.

Finally, no alternative solutions have been suggested which fully would accommodate the plaintiffs' rights at a de minimis cost to the department's valid penological goals. The plaintiffs suggest the department's aims could be satisfied by prohibiting three-way calling and using the prerecorded announcement that a call was from a Massachusetts inmate. However, we defer to the department's judgment that eliminating the recording system would undermine its ability to deter criminal activity conducted over the telephone with the assistance of the call's recipient. Moreover, requiring the department to obtain a search warrant in order to monitor calls, as the plaintiffs suggest could be done, would require

---

[11]The uncontested affidavit of the assistant deputy commissioner of secure facilities for the department addresses this point as follows: "The inmate telephone system is collect call only for security reasons. Inmates are not allowed to use credit calling cards for several reasons. Such cards represent a means by which stronger inmates could strongarm or blackmail weaker inmates; such cards with their dialing code could be used to commit telephone toll fraud; telephone credit cards may be used by inmates as a form of currency, thereby generating and fostering illicit trade and activities among prisoners, such as robberies, drug dealing, gaming and similar activities; finally, use of [ ] calling cards would allow inmates to more easily circumvent the recording and monitoring provisions of the system."

the department to devote substantial resources to establishing probable cause. The fact that there is no easy, obvious solution to the issues suggests the regulations are reasonable, rather than an "exaggerated response" to prison concerns.[12] *Turner* v. *Safley, supra* at 90.

We now discuss each of the plaintiffs' constitutional claims more specifically.

(a) *Article 14.* The Federal courts have concluded that the monitoring of inmate telephone calls does not violate the Fourth Amendment to the United States Constitution. See, e.g., *United States* v. *Van Poyck,* 77 F.3d 285 (9th Cir. 1996); *United States* v. *Horr,* 963 F.2d 1124, 1126 (8th Cir.), cert. denied, 506 U.S. 848 (1992); *United States* v. *Amen,* 831 F.2d 373, 379-380 (2d Cir. 1987), cert. denied sub nom. *Abbamonte* v. *United States,* 485 U.S. 1021 (1988); *United States* v. *Paul,* 614 F.2d 115, 116-117 (6th Cir.), cert. denied, 446 U.S. 941 (1980). We have accorded art. 14 protection against secret electronic surveillance in a private home, *Commonwealth* v. *Blood,* 400 Mass. 61 (1987), and we have said that a protected privacy interest exists under art. 14 "when it is shown 'that a person [has] exhibited an actual (subjective) expectation of privacy,' and when that 'expectation [is] one that society is prepared to recognize as 'reasonable.' " *Id.* at 68, quoting *Katz* v. *United States,* 389 U.S. 347, 361 (1967) (Harlan, J., concurring).

Although the plaintiffs have not consented to the monitoring and recording of their telephone calls, they have been made aware of the procedure and its requirements. The monitoring and recording is not surreptitious in any sense. A place of incarceration is not accorded the protection given a private residence, cf. *Price* v. *Johnston,* 334 U.S. 266, 285

---

[12]The department asserts that good results have been obtained from the regulations. The uncontested affidavit of the assistant deputy commissioner for the department discloses the following. "In the short time since use of the new inmate telephone system began, its benefit as an important correctional tool has been apparent. For example, after a recent escape the pre-authorized telephone numbers and conversations of the escapees were used to quickly locate them and led to their return behind bars. In addition, several instances of drugs being brought to inmates through visitors have been detected and foiled as a result of the monitoring of conversations between inmates and their visitors. A system which reduces the flow of illegal drugs into the facility is of great value in maintaining the safe, secure and orderly running of all correctional facilities."

(1948), and the record establishes that valid penological interests justify the regulations. In these circumstances, art. 14 is not violated, and the regulations are valid against the facial challenge asserted.

(b) *Access to courts and to counsel.* The constitutional right of access to the courts requires correctional officials "to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law." *Harris* v. *Commissioner of Correction,* 409 Mass. 472, 479 (1991), quoting *Bounds* v. *Smith,* 430 U.S. 817, 828 (1977). Any plan to give inmates access to the courts need only provide access that is adequate, effective, and meaningful when viewed as a whole. *Bounds* v. *Smith, supra* at 832.

Inmates have direct access to institutional law libraries or legal assistance. This access satisfies the constitutional requirement of access to the courts.

In addition to the right of access to the courts, inmates with pending criminal charges or pending appeals have a constitutional right to effective assistance of counsel. The regulations do not deny this right. Inmates are permitted to make unmonitored telephone calls to five separate attorneys, as well as to three legal services organizations. Inmates also may make contact with attorneys by mail and through prison visits. If an inmate needs to hire a new attorney before it is time to change telephone numbers, he may communicate with a new attorney by mail and arrange for a visit. Moreover, the regulations provide that inmates may request changes in their telephone lists at any time on an emergency basis. Accordingly, the restriction on when an inmate may add new telephone numbers to his list does not violate his right to effective assistance of counsel.

The limit of five attorneys, time limits on telephone calls, and the prohibition on toll-free calls also do not violate an inmate's right to effective assistance of counsel. These limitations, when viewed in conjunction with an inmate's ability to use the mails and have visits, provide sufficient access to attorneys. Cf. *Bellamy* v. *McMickens,* 692 F. Supp. 205, 214 (S.D.N.Y. 1988) (although prisoners have a right to gain access to counsel from prison, they have no right to unlimited telephone calls and "restrictions on inmates' access to counsel via the telephone may be permitted as long as prisoners have

some manner of access to counsel"). The regulations are valid against the facial challenge asserted on the basis of deprivation of access to courts and to counsel.

(c) *Article 16.* The plaintiffs argue, with respect to the free speech and expression rights protected by art. 16, that we should apply to the regulations the standard set forth in *Procunier* v. *Martinez*, 416 U.S. 396, 404-414 (1974), which held that censorship of inmates' direct personal correspondence only is justified if it (1) furthers one or more of the important and substantial governmental interests of security, order, and the rehabilitation of inmates, and (2) is no greater than is necessary to further the legitimate governmental interest involved. The United States Supreme Court has made clear, however, that the *Procunier* standard does not apply to the regulation of activities which may pose a serious threat to prison order and security. See *Thornburgh* v. *Abbott*, 490 U.S. 401, 411 (1989). When such activities are involved, the analysis in *Turner* v. *Safley*, *supra*, is called for, and, in this particular area, we have held that an inmate's Federal and State constitutional free speech and expression rights are subject to the same analysis. See *Champagne* v. *Commissioner of Correction*, 395 Mass. 382, 386 (1985). For the reasons already discussed, the government defendants have shown that the regulations satisfy the *Turner* inquiry. The plaintiffs' facial challenge based on art. 16 lacks merit.

3. *Conclusion.* It follows from what has been said that the case was an appropriate one for summary judgment under the standard governing that procedure. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 715 (1991). NET and the government defendants demonstrated by means of affidavits and other materials that the regulations were lawful in the context of the plaintiffs' claims of facial invalidity. The judge had discretion to deny an extension of time when it became apparent that the challenges made by the plaintiffs could not succeed. The judge also was not obliged to conduct an evidentiary hearing on the plaintiffs' assertion that there perhaps was a better, less restrictive method of dealing with the need for telephone monitoring. As long as the regulations had been lawfully promulgated, the department was not required to adopt other procedures that might have accomplished some or all of its purposes in a different way. We conclude, therefore, that summary judgment was appropriately granted

for the defendants on the claims made by the plaintiffs, and we leave for another day possible applications of the regulations that might raise hard questions.

*Judgment affirmed.*