Fremont-Smith, J.
The plaintiffs, Carol Breest and others ("Breest”), who are inmates, spouses, or friends of inmates, and a staff member of a community organization that advocates for low income persons, including prisoners, seek to enjoin the defendant, Larry DuBois (“DuBois”) from monitoring and tape recording telephone calls that originate from Massachusetts Correctional institutions. The plaintiffs allege the following: violation of the Massachusetts and Federal wiretapping statutes (Count I); interference with the *247 right to privacy (Count II); violation of inmates’ right of access to the courts and right to counsel (Count III); violation of inmates’ right to religious freedom (Count IV); violation of inmates’ right to free expression and right to petition the government (Count V); violation of the Administrative Procedures Act (Count VI); and lack of statutory authority to impose a fee on inmates for using the telephone system (Count VII). On July 14, 1997, the Court held a hearing on motions in this and other consolidated cases which raise similar challenges to defendant’s restrictions on inmate use of telephones. The plaintiffs and defendant have moved for summary judgment. For the following reasons, the plaintiffs’ motion for summary judgment is denied and the defendant’s motion for summary judgment is allowed as to all counts of the complaint except Count II, as to which plaintiffs’ motion is allowed in part.

FACTUAL BACKGROUND

The record presented on summary judgment presents the following undisputed facts. On April 8, 1994, the Department of Corrections (“the DOC”) promulgated new regulations (103 Code Mass. Regs. §§482.01-482.14) which govern inmate access to, and use of, telephones in the Massachusetts correctional system. Pursuant to these regulations, the DOC entered into a contract with New England Telephone and Telegraph Company (“NET”) for an automated operator telephone system that is able to record inmate calls.
The regulations provide that all inmate calls, except those made to attorneys, are subject to monitoring and recording by DOC officials. Inmates who use the telephones must first receive a personal identification number (“PIN”).[3] The regulations provide that inmates who accept a PIN number and use the telephones must sign a form, which states that their use of the telephone will be deemed consent to the monitoring and recording of all telephone conversations except with attorneys.
The regulations limit an inmate to a total of fifteen telephone numbers to which calls may be placed, with five of these numbers reserved for attorneys.[4] Inmates are also authorized to call, on a nonmonitored basis, Massachusetts Correctional Legal Services, Harvard Prisoner Legal Assistance Project, and Northeastern University Legal Assistance.
Inmates are limited to one-way collect calls. An automated operator system informs the call recipient that a collect call is originating from an inmate at a Massachusetts correctional institution, that a call to a person other than an attorney may be monitored or recorded, and that the recipient should press “1" if the call is to be accepted. Calls to 411, 800, 900, 550, and 976 numbers or overseas numbers are prohibited. The Superintendent at each institution is to establish telephone use policies, including times when telephones are available to inmates and limits on the duration of calls.
Inmates may still engage in unmonitored communications with persons outside the correctional facilities by mail, and may meet privately with attorneys and other visitors during visiting hours. They also have access to legal materials in the prison law libraries.
The DOC promulgated the telephone regulations to prevent inmates from using the telephone system for illegal activities such as planning escapes, organizing drug trafficking, orchestrating criminal activities, soliciting murder, using third-party calls or telephone credit cards in a fraudulent manner, and harassing members of the media, public officials, or victims.

DISCUSSION

Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue “and that the moving parly is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A parly moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving parly’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
In 1996, the Supreme Judicial Court addressed what it described as a “facial challenge” to the legality of the regulations in Cacicio v. Secretary of Public Safety, 422 Mass. 764 (1996). The Court held that the regulations did not violate the defendants’ right 1) to be free from unreasonable searches and seizures under art. 14 of the Declaration of Rights of the Massachusetts Constitution, 2) of access to the courts and right to effective assistance of counsel as protected by the First, Fourteenth, and Sixth Amendments to the United States Constitution, and 3) to freedom of speech and expression as protected by art. 16 of the Declaration of Rights. The Court also held that NET is not a government actor subject to constitutional claims. The Court did not address claims alleged in the complaint that were not raised on appeal,[5] and it left “for another day possible applications of the regulations that might raise hard questions.” Id. at 775. The plaintiffs now raise various issues, some of which were not addressed in Cacicio.
Count I: The Massachusetts and Federal Wiretapping Statutes
The plaintiffs contend that the regulations violate the Massachusetts and Federal wiretapping statutes, *248 M.G.L.c. 272, §99 and 18 U.S.C. §§2510-2520. G.L.c. 272, §99 provides that it is unlawful to:
willfully commit! ] an interception, attempt! ] to commit an interception, or procure! 1 any other person to commit an interception or to attempt to commit an interception of any wire or oral communication . . .
An interception means to:
secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication . . .
If a recording is not made secretly, it does not constitute an interception. Commonwealth v. Jackson, 370 Mass. 502, 505 (1976). A court need not determine whether there was “prior authority” (i.e. whether the parties consented to the recording) unless it finds that the recording was made secretly. Id. at 507. A recording is not made secretly, moreover, if the caller has actual knowledge of the recording, and “actual knowledge is proved where there are clear and unequivocal objective manifestations of knowledge." Id.
It is undisputed that all inmates are informed, when they receive their PIN number, that all calls except attorney calls may be monitored or recorded, and are required to sign a form which so states. When an inmate call is received, moreover, the recipient hears a recording which states that the call is from an inmate at a Massachusetts Correctional Facility and that it may be monitored or recorded. The recipient then must push “1" to accept the call.[6] On these facts, it cannot be disputed that the recordings are not done secretly.[7] Because the monitoring and recording are not done secretly, they do not constitute "interception" within the meaning of G.L.c. 272, §99, regardless of whether any party had consented.
The plaintiffs also contend that the regulations violate 18 U.S.C. §2510-2520, the Federal Wiretap Act. The Federal Wiretap Act provides that:
any person who . . . intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be punished as provided . . .
18 U.S.C. §2511(1)(a)
intercept means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device . . . other than . . . any telephone . . . equipment. . . being used ... by an investigative or law enforcement officer in the ordinary course of his duties . . . (emphasis added)
18 U.S.C. §2510(4)(5)
an “investigative or law enforcement officer” means any officer .. . who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter . . .
18 U.S.C. §2510(7)
The defendant maintains that the recording and monitoring is lawful because the DOC officer who monitors the call is a “law enforcement officer acting in the ordinary course of his duties.” In Langton v. Hogan, 71 F.3d 930, 936 (1st Cir. 1995), two inmates alleged that the same regulations at issue here violated a 1979 consent decree because the interceptions were not authorized by the Federal Wiretap Act.[8] The Court observed that it was “aware of no reported decisions to this effect that are binding in this court or in the state courts of Massachusetts,” and that “(t]he issue in this circuit . . . is [ ] reasonably debatable.” Although it expressly declined to decide the legal issue, it went on to uphold the enforcement of the consent decree in those circumstances. A number of other federal courts, however, including a recent decision of the Massachusetts Federal District Court, have held that monitoring and recording inmate calls does not violate the Federal Wiretapping Statute. See Gilday v. Dubois, C.A. No. 94-10949-DPW (D.Mass. 1996); United States v. Sabubu, 891 F.2d 1308, 1328-29 (7th Cir. 1989) (prison officials are “investigative or law enforcement officers” within the meaning of §2510, the monitoring was done in the ordinary course of business because it was authorized and undertaken according to prison regulations and was conducted pursuant to an institutionalized, ongoing policy at the prison, and the inmates were notified about the monitoring policy); United States v. Paul, 614 F.2d 115, 117 (6th Cir. 1980) cert. denied, 446 U.S. 941 (1980); State v. Fornino, 223 N.J.Super. 531, 539 A.2d 301, 308 (App.Div. 1988). This Court agrees that officers at the DOC are, in the ordinary English language meaning of the term, “law enforcement officers acting in the ordinary course of their duties,” so that the monitoring and recording by such officers is within the exception provided in §2510(4) (5)(7).
Moreover, §2511(c) provides:
It shall not be unlawful ... for a person acting under color of law to intercept a wire, oral, or electronic communication, where . . . one of the parties to the communication has given prior consent to such interception.
The defendant points out that the inmates consent to the calls when they sign the form indicating that they are aware of and are consenting to the monitoring and recording, and that, although the wire tapping statute requires only one party to consent, the recipients of the inmate calls also consent to the monitoring and recording. Although the court in Langton went on to say that legality under the federal statute was also unclear because it could “reasonably be argued that ‘implied consent’ in this sense is not a free and volun *249 taiy consent; it is instead no more than a choice between unattractive options," id., 936, the First Circuit, in Griggs-Ryan v. Smith, 904 F.2d 112, 116-17, had earlier analyzed the issue of implied consent in regard to the Federal Wiretap Statute and said:
“Congress intended the consent requirement to be construed broadly”... [and] consent inheres where a person’s behavior manifests acquiescence or a comparable voluntary diminution of his or her otherwise protected rights . . . [I]mplied consent is “consent in fact” which is inferred “from surrounding circumstances indicating that the [party] knowingly agreed to the surveillance” . . . Thus, implied consent — or the absence of it — may be deduced from “the circumstances prevailing” in a given situation . . . The circumstances relevant to an implication of consent will vary from case to case, but the compendium will ordinarily include language or acts which tend to prove (or disprove) that a party knows of, or assents to, encroachments on the routine expectation that conversations are private.
Moreover, as recognized by the Court in Langton, supra, at 936, a number of other federal courts have held that signing a consent form constitutes consent even where inmates will be denied telephone access if they do not sign the forms. See Golda v. Dubois, supra.; United States v. Horr, 963 F.2d 1124, 1126 (8th Cir. 1992) (where inmate signs a consent form and is told of the recording policy, he is deemed to have consented to the monitoring, for “it was his choice to use the telephone”); United States v. Amen, 831 F.2d 373, 378-79 (2nd Cir. 1987); United States v. Paul, 614 F.2d 115, 117 (6th Cir. 1980); United States v. Valencia, 711 F. Supp. 608, 611 (S.D.Fla. 1989); United States v. Willoughby, 860 F.2d 15, 19-20 (2nd Cir. 1988); United States v. Workman, 80 F.3d 688, 692-94 (2nd Cir. 1996); United States v. Van Poyck, 77 F.3d 285, 292 (9th Cir. 1996). But see United States v. Cheeley, 814 F.Supp. 1430, 1433 (D.Alaska 1992); Crooker v. U.S. Dept. of Justice, 497 F.Supp. 500, 503 (D.Conn. 1980) (that inmates knew or should have known of prison monitoring system not sufficient to establish consent); United States v. Daniels, 902 F.2d 1238, 1245 (7th Cir. 1990).
It is, moreover, undisputed that, although inmates who refuse to sign the form will be permitted to make unmonitored telephone calls to attorneys only, they can still maintain contact and communicate with others through the mail and by personal visits. And it is undisputed that persons receiving calls from inmates also, as a rule, acquiesce in the monitoring by accepting the calls. While there is, without question, no practical alternative to acquiescence for inmates and their families if they wish to communicate by telephone, so the question is not free from doubt, the Court concludes, in these circumstances, and in accordance with the weight of authority, that inmates who sign the consent form when they accept their PIN number, do consent, for purposes of the federal statute, to the monitoring and recording of all calls except calls to attorneys.
Count II; Right to privacy
The plaintiffs urge that the regulations also violate their right to privacy under art. 14 of the Mass Declaration of Rights and G.L.c. 214, §1B. Specifically, one plaintiff alleges that “he seeks to use the telephone to speak to his psychologist [and] several members of the clergy . . . without being monitored or tape recorded” (complaint, 6), and the complaint generally challenges the monitoring and recording of confidential telephone communications “with ordained clergy and licensed psychologist, psychiatrist, social workers, physicians, and or other professions,” i.e., “conversations defined as privileged under Massachusetts law” (complaint, 2). In Cacicio, the Court employed the test set forth in Turner v. Safely, 482 U.S. 78, 89-91 (1987), to determine that the regulations were facially lawful.[9] Id. at 770. The DOC, however, has presented no evidence, in the record, to indicate that the Turner criteria are satisfied with respect to the monitoring of communications recognized in Massachusetts as privileged.
No facts are contained in the motion record that the DOC’s concerns, which are legitimate with regard to inmate communications with the general public, are necessary in regard to inmate communications with designated, preapproved, licensed mental health care professionals and ordained clergy. It would seem unlikely that inmates would attempt to plan criminal conspiracies with such preapproved, licensed professionals, who could be subject to loss of license and other discipline. Moreover, the confidential nature of communications between an inmate and his clergyman or mental health professional is well recognized in Massachusetts, as such communications have been specifically accorded confidential status by the Legislature and courts.[10] Not only is there no demonstrated rational connection between monitoring calls to ordained clergy and licensed health professionals and the DOC’s legitimate desire to prevent criminal activity, but there would not seem to be suitable inmate alternatives to. telephone communication. For such communications, the mail and infrequent personal visits would not seem to allow for sufficient and meaningful interchange.
On the other hand, there is no such privileged status with respect to communications with staff members of community organizations, such as the plaintiff staff member of Arise for Social Justice (complaint, 3), or for communications with physicians or spouses.[11]
Accordingly, this Court orders that the DOC shall, within ten days of receipt of this order, serve and file a detailed affidavit and memorandum of reasons if it contends it is necessary to monitor and record calls to preapproved, ordained, clergy and licensed, preapproved psychotherapists, physicians, social work *250 ers, and mental health and human service professionals (following the filing of which, plaintiffs may file and serve, within 10 days of receipt thereof, opposition papers). If the DOC does not file and serve such papers, it shall, within 30 days of receipt of this Order, provide for unmonitored and unrecorded calls between an inmate and his or her designated, preapproved ordained clergyman, and his or her designated, preapproved licensed psychotherapist, social worker, and mental health and human service professional.
Count III: Access to courts and right to assistance of counsel
The plaintiffs allege that the regulations violate their right of access to the courts and to assistance of counsel under arts. 1, 10, 11, and 12 of the Mass. Declaration of Rights and under the First, Sixth, and Fourteenth amendments to the United States Constitution. The Court in Cacicio has determined, however, that the constitutional requirement of access to the courts is satisfied under the DOC’s regulations because the inmates have direct access to law libraries and legal assistance. Id. at 773. The Court in Cacicio also ruled that the regulations do not violate the inmates’ right to effective assistance of counsel because ”[i]nmates are permitted to make unmonitored telephone calls to five separate attorneys . . . [and] three legal services organizations.” Id. The limitations on the inmates’ phone calls, “when viewed in conjunction with an inmate’s ability to use the mails and have visits, provide sufficient access to attorneys.” Id.
Count IV: Right to Religious Freedom
The plaintiffs allege that the regulations violate their right to religious freedom under the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§2000bb, art. 2 of the Mass. Declaration of Rights, and the First and Fourteenth amendments to the U.S. Constitution.
The plaintiffs’ claim under the Religious Freedom Restoration Act, however, has been mooted by the United States Supreme Court holding that the Act is unconstitutional, in City of Boerne v. Flores, No. 95-2074, 1997 U.S. LEXIS 4035. Moreover, pursuant to this opinion, this Court is ordering that telephone communications between an inmate and his designated, preapproved ordained clergyman shall not, at least without further demonstrated need, be monitored or recorded. Accordingly, an inmate’s right to religious freedom is not violated by the regulations, particularly in view of the inmates continuing right to receive personal visits and/or communications through the mails.
Count V: Right to free expression and to petition the government
The plaintiffs argue that the regulations violate their First Amendment rights and their rights under Art. 16 of the Massachusetts Declaration of Rights because they are not permitted to call nonprofit entities operating 800 numbers. A challenge to the regulations under Art. 16 and the First Amendment is governed by the test set out in Turner, supra. Cacicio at 774. Although the plaintiffs argue that the DOC’s interest in banning such calls is not neutral or legitimate, the stated purpose of banning calls to 800 numbers is to prevent fraud, which is a legitimate interest. There are, moreover, alternative means the prisoner may exercise. He can communicate with nonprofits through the mail or call those same nonprofits without using their 800 number, on a collect, monitored basis. Additionally, with the myriad of 800 numbers in existence, it would be difficult and cumbersome for the DOC to locate every nonprofit entity with an 800 number at de minimus cost. Because the ban on 800 numbers satisfies the Turner test, the regulations do not violate the inmates’ rights under the Massachusetts Declaration of Rights or the First Amendment.
The plaintiffs also argue that the regulations violate their right to petition the government. As the Court in Cacicio observed regarding inmates’ access to the courts, however, the inmates may petition the government through the mail, and have direct access to law libraries and “adequate assistance from persons trained in law” to assist them in petitioning the government. Cacicio at 773. Moreover, inmates can designate one or more of their ten preapproved calls to government officials and telephone them on a collect, monitored basis. For these reasons, the Court concludes that the regulations do not violate the inmates’ right to free expression or right to petition the government.
Count VI: Administrative Procedure Act
The plaintiffs assert that the DOC has violated their rights under the Administrative Procedure Act, G.L.c. 30A §§2 and 5, because it promulgated the telephone regulations without holding a valid public hearing and did not file a fiscal impact statement.
Based on the undisputed facts presented here, however, the DOC met all of the statute’s requirements governing the promulgation of regulations. The evidence submitted shows that the DOC, in accordance with G.L.c. 30A, §2, published a timely notice of a public hearing in the Boston Herald, gave personal notification of a public hearing to those persons who requested such notice or who were required to receive such notice, and filed such notice with the State Secretary. As required by statute, the notice referred to the statutory authority under which the DOC proposed the action, listed the date, time, and place of the public hearing, and contained the substance of the proposed regulations. A public hearing was held on March 10, 1994 and was attended by 40 to 50 people, some of whom presented testimony on behalf of the inmates.
*251 The DOC also complied with the requirements regarding fiscal impact statements. The State Administrative Procedure Act provides that:
No rule or regulation so filed with the state secretary shall become effective until an estimate of its fiscal effect including that on the public and private sector... or a statement of no fiscal effect has been filed with said secretary. In addition, no rule or regulation so filed . . . shall become effective until an agency has filed with the state secretary a statement considering the impact of said regulation on small business. G.L.c. 30A, §5.
The.DOC filed a statement with the state secretary stating Üiat the regulations would have no fiscal impact on the public or private sector or on small businesses. Even assuming the possible inaccuracy of such statements, no language in c. 30A, §5 suggests that inaccuracies in the fiscal impact statement might nullify the regulations. See American Grain Products Processing Institute v. Department of Public Health, 392 Mass. 309, 326 (1984) (in estimating the fiscal effect of an emergency regulation, the agency is held only to a good-faith standard with regard to its accuracy).
Because plaintiffs have submitted no evidence in the record to indicate that the DOC violated any provision of G.L.c. 30A, §§2 and 5, and because “any challenge to the validity of a rate approved by the DPU must be brought before the agency, not the Superior Court,” Spence v. Boston Edison Co., 390 Mass 604, 611 (1983), and an appeal therefrom must be made directly to the Supreme Judicial Court, Robinson v. Department of Public Utilities, 412 Mass. 458 (1992), this Court finds that Count VI of the plaintiffs complaint is without merit.
COUNT VII: Lack of statutory authority
The plaintiffs claim that the DOC acted outside the scope of its authority by requiring NET to pay the DOC a forty percent commission on all inmate calls.
Under M.G.L.c. 124, §1, the Commissioner of Corrections is responsible, for “maintain[ing] security, safety and order at all state correctional facilities . . . [and for]... mak[ing] and entering] any contracts and agreements necessary or incidental to the performance of the duties and execution of the powers of the department. . .” G.L.c. 124, §l(b)(m).
Because institutional telephones can be used by inmates to disrupt security, safety and order, the Commissioner has the power to regulate inmate access to, and use of, prison telephones. The Commissioner is also permitted to enter into contracts necessary or incidental to the exercise of his authority to regulate telephones. Therefore, the DOC’s authority to enter into the agreement with NET, pursuant to which it receives the commissions, is derived from its power to enter into contracts in order to maintain security, safety and order. See Grocery Manufacturers of America, Inc. v. Department of Public Health, 379 Mass. 70, 75 (1979) (“a regulation may be authorized even where it cannot be traced to specific statutory language . . . ‘An agency’s powers are shaped by its organic statute taken as a whole.’. . . Powers granted include those necessarily or reasonably implied”).
Because the DOC has the power to enter into contracts, including those in which it receives a commission, as derived from its broad powers under G.L.c. 124, this Court finds that Count VII of the plaintiffs complaint is without merit.

ORDER

For the above reasons, the Court hereby ORDERS that summary judgment shall enter for the defendants on all counts of the complaint except Count II. With respect to Count II, the Court orders that the DOC shall, within thirty days of its receipt of this order, provide for unmonitored and unrecorded calls between an inmate and his or her designated and preapproved ordained clergyman, and between an inmate and his or her preapproved and licensed psychotherapist, physician, social worker and/or mental health and human service professional, unless the DOC has, within ten days of receipt of this Order, filed and served a detailed affidavit and memorandum setting forth with particularity the reasons that such unmonitored and unrecorded confidential communications should not be allowed.

 This is similar, for instance, to the identification number which a bank customer uses to access an ATM.

 An inmate is permitted to add to or alter the list of designated call recipients, once every three months.

 The Court specifically refused to consider claims that the regulations violate 42 U.S.C., §§2000 bb, et seq. (the Federal Religious Freedom Restoration Act of 1993), G.L.c. 272, §99 (the Massachusetts Wiretap Statute) or 18 U.S.C. §2510, et seq. (the Federal Wiretap Act). Id., 769, n.9.

 If the call is received by an answering machine, the call cannot be accepted by the machine, so no inmate communication is made or monitored.

 The plaintiffs contend that the calls are recorded secretly in instances where an inmate’s family cannot understand the recording due to a language barrier and is therefore unaware that the call may be monitored. The inmate, however, is aware. Moreover, the recorded message is given in both English and Spanish, and it would, as a practical matter, be impossible for the DOC to provide the recorded message in every language.

 The consent decree did not prohibit interceptions of telephone calls permitted under both the state and federal wiretap statutes.

 In Turner, the Supreme Court held that penological regulations are valid if 1) there is a valid, rational connection between the regulation and the governmental interest put forward to justify it; 2) there is an alternative means for inmates to exercise the infringed right: 3) accommodating the infringed right would have a significant impact, i.e., a “ripple effect,” on the allocation of prison resources generally; and 4) no ready alternatives are available or exist which would fully *252 accommodate the inmates’ rights at a de minimus cost to valid penological interests. Id. at 90-91.

 See G.L.c. 233, §20A (clergy); G.L.c. 233, §20B (psychotherapists); G.L.c. 112, §172 (mental health or human services professionals); G.L.c. 112, §135A (social workers).

 While physician records are afforded confidentiality under G.L.c. 11, §70E, communications with physicians are not. Spouses are disqualified from testifying about spousal communications under G.L.c. 233, §20, cl. 1, but the rule of disqualification is not a privilege. Handbook of Massachusetts Evidence, Liacos, 6th edition, p. 715.