Doerfer, J.
I. Introduction
Before the Court is Defendant’s Motion for Attorney-Client Communication together with the Commonwealth’s Opposition. Defendant asks the court to order the Department of Correction to allow him access to a telephone up to three times per week so he can communicate with counsel. He asks that these calls be allowed in addition to his allotment of personal calls. For the following reasons, Defendant’s Motion for Attorney-Client Communication is DENIED.
II. Facts
As of December 4, 1996, the Defendant was an inmate of the Massachusetts Correctional Institution at Cedar Junction. On that date he allegedly assaulted and killed another inmate. After an investigation, report, and disciplinary hearing, he was sentenced to ten years in the Departmental Disciplinary Unit (“DDU”) for the killing. An indictment of first degree murder was returned against him on December 30, 1996, for the alleged murder and is the sole indictment against which he defends in this case.
In his affidavit, Defendant states that inmates in the DDU must earn their telephone privileges by remaining free from misconduct. Upon being sentenced to the DDU, an inmate has no telephone privileges for the first thirty days. If the inmate remains free from misconduct for that period, he earns one phone call to use in the next thirty days for any purpose, either legal or personal. In each of the next three thirty day periods, if he remains misconduct-free, the inmate earns an additional phone call for use in the next thirty day period until he earns the maximum four phone calls. If at any time he is found to have committed a disciplinary infraction, he must begin the cycle again, starting with a thirty day period with no phone privi *465 leges. (Affidavit ofTimothy-Michael Bloom).[1] Defendant neglected to state how many phone calls he is currently receiving, although at the argument of the motion, counsel represented that the number was four.
Defendant alleges that he may also make additional calls to his attorney “if any legal matter is imminent and ongoing, which the Department of Correction interprets to [mean] if the case is actually on trial.” (Defendant’s Motion for Attorney-Client Communication). There is also a procedure for emergency telephone contact between inmate and attorney if initiated at the request of an attorney, and Defendant both has unlimited attorney-client mail privileges, Mass. Regs. Code, tit. 103, §481.09 (1996), and may have an unlimited number of in-person conferences with his attorney. Mass. Regs. Code, tit. 103, §486 (1993).
Defendant’s case was scheduled for trial on June 18, 1997, but has been continued. An evidentiary hearing on a variety of issues, including a Motion to Dismiss the Indictment, is scheduled for October 2, 1997. Defendant asserts that the charge of first degree murder is both ongoing and urgent and that the Sixth and Fourteenth Amendments require that he be given access to a telephone up to three times per week to communicate with counsel about his case.
III. Discussion
Under the Sixth and Fourteenth Amendments to the United States Constitution an accused person, including one imprisoned while awaiting trial, holds a fundamental constitutional right of access to the courts and the right to effective assistance of counsel. Lewis v. Casey, 116 S.Ct. 2174, 2177 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); and Cacicio v. Secretary of Public Safety, 422 Mass. 764, 773 (1996). Indeed, an inadequate preservation of this interest prior to trial may provide a basis on which to challenge the ultimate fairness of a person’s trial. Johnson-El v. Schoemel, 878 F.2d 1043 (8th Cir. 1989). Thus, prison “ [regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." Procunier v. Martinez, 416 U.S. 410, 419 (1974).
Of course prison administrators are charged with the difficult responsibility of establishing institutional rules that meet the complexities and dangers of prison operation, and judicial deference to their expertise is warranted. Thus, even if a regulation or practice “impinges on an inmate’s constitutional rights [it may be] valid if it is reasonably related to legitimate penological interests.” Cacicio, 422 Mass at 770.
Prisoners housed in the DDU are inmates who have been found to pose a serious risk of danger to the other inmates and the personnel of the institution. For this reason they have more limited privileges than the general population, including more limited telephone privileges. They are only sentenced to the DDU after a disciplinary report, investigation and hearing and a finding of guilt on a serious disciplinary offense committed while in custody. Department of Correction (“DOC”) Regulations state that inmates housed in DDUs “shall have telephone privileges as authorized by the Superintendent” of the institution. Mass. Regs. Code, tit. 103, §482.09(5) (1994). This regulation gives Superintendents wide discretion in the regulation of telephone privileges in the DDU as part of their mandate to maintain the security and order at correctional facilities in the Commonwealth. See Mass. Gen. Laws Ann. ch. 124, §1(b) (1991).
Counterbalancing this broad grant of authority is Chapter 127, Section 36A, regarding inmate conferences with attorneys. It commands that “[t]he Superintendent shall not abridge the right of an inmate of any . . . institution... to confer with any attorney at law engaged or designated by him...” Mass. Gen. Laws Ann. ch. 127, §36A (1991). The SJC has interpreted §36A as granting the right of “reasonable” access to counsel and the courts. Hoffer v. Commissioner of Correction, 397 Mass. 152, 155-56 (1986). This statute and the Constitutional constraints outlined above create an obvious tension with the undeniable need to maintain a safe and orderly environment in this Commonwealth’s prisons and to conserve prison resources. It is for this reason that the court must carefully scrutinize the effect of DDU’s restrictions on Defendant’s telephone use to determine whether they constitute a reasonable restriction on his access to counsel and the courts. Johnson-El, 878 F.2d at 1051.
Defendant currently has the privilege of making four phone calls per month. He can make them all to his attorney if he so chooses. In addition, he has unlimited access to his attorney by mail and can regularly meet with his attorney face to face. While these limitations on his means of communication with his attorney may be less than ideal, the procedures currently afforded by the DDU do not deprive the Defendant of reasonable access to either his attorneys or the court. See Pino v. Dalsheim, 558 F. Supp. 673, 675 (S.D.N.Y. 1983).
The Defendant was found guilty, after a hearing, of having committed the most serious of disciplinary offenses. The DOC maintains tight security over inmates in DDU and must follow strict procedures to provide Defendant with access to a telephone. This court declines to substitute its judgment for the judgment of the prison administration regarding the proper and efficient delegation of prison resources and manpower without a stronger showing by the Defendant that meaningful contact between himself and his attorney has been curtailed. See Cacicio, 422 Mass at 769.
This court is cognizant that Defendant faces both the most serious of charges by the indictment of first degree murder and the untenable choice of contacting either his attorney or his family when making his phone calls. Indeed, this court would be seriously concerned if Defendant presented facts showing that his phone privileges were completely suspended or even curtailed to less *466 than four per month under the DDU’s current practices. Also, when the defendant is at an evidentiary hearing he should be regarded as “on trial” and be given the telephone privileges applicable to that status.
Under the facts currently presented, however, the court finds that Defendant, at present, has reasonable access to his attorney and the courts by various means, and that DOC has a legitimate penological interest in limiting the number of phone calls made by prisoners housed in the DDU. The Defendant’s Motion for Increased Attorney-Client Communication is, therefore, DENIED.
ORDER
It is hereby ORDERED that Defendant’s Motion for Increased Attorney-Client Communication is DENIED.

 This procedure for earning phone calls was also outlined in the court’s findings of undisputed facts regarding conditions of confinement in Torres v. Dubois, 6 Mass. L. Rptr. No. 18, 386, 389 (Sup. Ct. March 31, 1997).