COMMONWEALTH *vs.* ANTHONY JACKSON.

Suffolk.    May 3, 1976. — June 14, 1976.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Evidence,* Telephone conversation. *Eavesdropping. Disclosure of Communication. Words,* "Interception."

At a criminal trial, the defendant's motion under G. L. c. 272, § 99P, to suppress from evidence two telephone calls by the defendant to the victim's apartment, which were recorded by the victim's brother, was properly denied; the defendant's statements during the calls, evidencing recognition that the calls were being recorded and apparent indifference to the consequences, indicated knowledge, so that the recordings were not made "secretly" and thus were not an "interception" within the meaning of c. 272, § 99 B 4. [503-507]

INDICTMENTS found and returned in the Superior Court on February 13, 1973.

A motion to suppress evidence was denied by *Linscott, J.*

The defendant's application for an interlocutory appeal was allowed by *Reardon, J.,* and the appeal was reported by him.

*Robert S. Potters* (*Joseph J. Balliro* with him) for the defendant.

Commonwealth *v.* Jackson.

*Bonnie H. MacLeod-Griffin,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.   In this case we address the issue whether two taped telephone conversations in which the defendant was a participant were lawfully recorded under G. L. c. 272, § 99.[1] The defendant filed a petition for interlocutory relief (G. L. c. 278, § 28E) from the trial judge's denial of his motion to suppress these two recorded telephone calls. A single justice of this court allowed the defendant's petition and reserved and reported the case on a statement of agreed facts for a determination by the full court. We affirm the trial judge's denial of the motion to suppress and hold that the tape recordings do not constitute an "interception" in violation of G. L. c. 272, § 99.

The facts pertinent to this interlocutory appeal are as follows. On November 29, 1972, Damaris Synge Gillispie failed to return to her Cambridge apartment. On December 6 and 7, 1972, an unknown male called Miss Gillispie's residence on five separate occasions. During these five calls the caller provided information relating to Miss Gillispie's clothing, her friends, her family, and articles of clothing that she was wearing when she disappeared. He also asserted that "I have her." Each of these calls was recorded by the victim's brother, who used a "tape recording cas-

---

[1] Although the provisions of G. L. c. 272, § 99, are lengthy and oftentimes complex, see *Commonwealth* v. *Vitello,* 367 Mass. 224 (1975), those portions relevant to this appeal may be summarized as follows. Under § 99 P, a defendant in a criminal trial may move to suppress the contents of any intercepted wire or oral communication or evidence derived therefrom if the communication was obtained by means of an unlawful interception. Under § 99 B 4, see note 4 *infra,* an "interception" is committed, subject to limited exceptions dealing with an "investigative or law enforcement officer," if a person *secretly* records the contents of the communication through the use of any intercepting device and he does so without the *prior authority* of all the parties to the communication. An interception, as so defined, is unlawful unless it comes within one of the exemptions set forth in § 99 D, such as the exemption for those authorized persons who are acting pursuant to a warrant issued in accordance with the statute (§ 99 D 1 d). In the case before us, since none of the exceptions to § 99 B 4 or the § 99 D exemptions are applicable, we must determine if there was an "interception" within the meaning of § 99 B 4.

sette device" and attached the microphone to the earpiece of the telephone receiver with a suction cup.[2]

During the course of the first taped conversation the caller said, "You know, I know the phone is tapped, I'm hep to that, but I'm going to get in touch" and then he continued to speak describing certain of the victim's possessions.[3] During the third call the caller said, "I know the thing is being taped, but that's cool too" and then proceeded to talk about the victim. No such statements were made during the second, fourth or fifth call.

Subsequently, a member of the Cambridge police department took custody of the five recorded conversations. Thereafter, several individuals, who knew the defendant, identified the recorded voice of the caller as that of the defendant. On February 13, 1973, the defendant was indicted by the Middlesex County grand jury for the crimes of murder in the first degree and kidnapping.

After the defendant's indictment, the Commonwealth filed a motion for a voice exemplar of the defendant accompanied by an affidavit recounting the facts as outlined above. In response, the defendant moved to suppress the contents of the five taped conversations asserting that the communications were unlawfully intercepted in violation of G. L. c. 272, § 99, because he had no knowledge that his conversations were being intercepted nor did he ever authorize such interceptions.

The trial judge held that the tape recordings of the second, fourth and fifth telephone calls should be suppressed under G. L. c. 272, §99 P, which provides for the suppression in a criminal trial of the contents of wire or oral communication that is unlawfully intercepted or not inter-

---

[2] The victim's brother, who is not a member of any law enforcement agency, apparently informed a Cambridge police officer on December 2, 1972, that he had placed a recording device on the telephone in the Gillispie apartment in order to record incoming calls.

[3] At the close of the first conversation the caller said, "Call the police off, call them off, because you're making me nervous and I'm going to have to do something. . . . I'll get in touch, but get the cops off the line there."

cepted in accordance with the statute. His decision as to these calls is not before us on appeal. However, the judge denied the defendant's motion to suppress the statements made during the first call after the caller said that he knew the telephone was tapped, and similarly, the statements made during the third call following the words, "I know the thing is being taped." Limiting ourselves to a consideration of only the first and third calls, we affirm the decision of the trial judge.

As conceded by the Commonwealth, there can be no doubt in this case that the victim's brother used an "intercepting device" as defined in G. L. c. 272, § 99 B 3, and that he recorded the "contents" of "wire communications" within the meaning of G. L. c. 272, § 99 B 1 and 5. Therefore, the sole question before us is whether there was an "interception" as defined by c. 272, § 99 B 4, set forth below.[4]

While we recognize that G. L. c. 272, § 99, is designed to control the use of electronic surveillance devices by private individuals because of the serious threat they pose to "the privacy of all citizens" (§ 99 A), it is clear that the Legislature intended that the statutory restrictions be applicable only to the secret use of such devices. (See § 99 A, and see § 99 B 4 which defines the term "interception" to include "to secretly hear [or to] secretly record.") Thus, if the two recordings in this case were not made secretly, they do not constitute an "interception" as defined by § 99 B 4, nor should they be suppressed under § 99 P.

It is the defendant's argument that a recording is made secretly unless both parties have actual knowledge of the recording. He argues that the defendant's statements during the first and third calls, as to the conversation being "tapped" or "taped," must be considered as nothing more

---

[4] Subsection B 4 of G. L. c. 272, § 99, as appearing in St. 1968, c. 738, § 1, provides in relevant part: "The term 'interception' means to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication . . . ."

than mere speculation, since the defendant could not have known of the recording because the victim's brother never divulged the "secret" by acknowledging that he was taping the calls. We reject the defendant's position, for we do not believe that such an overly restrictive construction is necessary under the statute.

We agree, as argued by the defendant, that we would render meaningless the Legislature's careful choice of words if we were to interpret "secretly" as encompassing only those situations where an individual has a reasonable expectation of privacy. If the Legislature had intended to establish such a standard, the statute would have been written in terms similar to those used in the California eavesdropping statute, see generally *In re Joseph A*, 30 Cal. App. 3d 880 (1973), which applies to communications "carried on in such circumstances as may reasonably indicate that any party to such communication desires it to be confined to such parties . . . ." Cal. Penal Code § 632 (Deering 1971).[5] Rather, it is apparent from the Report of the Special Commission on Electronic Eavesdropping, 1968 Senate Doc. No. 1132, that the legislative intent was to impose more stringent restrictions on the use of electronic surveillance devices by private individuals than is done in other States.[6]

---

[5] See also Cal. Penal Code § 633.5 (Deering 1971), which provides that "[n]othing in Section . . . 632 shall be construed as prohibiting one party to a confidential communication from recording such communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to such communication of the crime of extortion, kidnapping, bribery, [or] any felony involving violence against the person . . . ."

[6] In this regard we note that the commission, 1968 Sen. Doc. No. 1132, rejected the prevalent approach of permitting wiretapping and eavesdropping in cases of one-party consent. See, e.g., N.Y. Penal Law § 250.00 (McKinney 1967). See also Greenawalt, The Consent Problem in Wiretapping & Eavesdropping: Surreptitious Monitoring with the Consent of a Participant in a Conversation, 68 Colum. L. Rev. 189 (1968). One-party consent had been the operative standard in this Commonwealth prior to the 1968 amendment of G. L. c. 272, § 99. See G. L. c. 272, § 99, as appearing in St. 1959, c. 449, § 1 ("Whoever . . . secretly or without the consent of either a sender or receiver . . . .").

Despite this conclusion, we do not accept the defendant's position that the statute requires that the caller be informed that his conversation is being recorded if no "interception" is to be found. No such provision, express or implied, exists in the statute. Nevertheless, we accept, as urged by the defendant, the proposition that the caller needs to have actual knowledge of the recording, but we believe that actual knowledge is proved where there are clear and unequivocal objective manifestations of knowledge, for such indicia are sufficiently probative of a person's state of mind as to allow an inference of knowledge and to make unnecessary any further requirement that the person recording the conversation confirm the caller's apparent awareness by acknowledging the fact of the intercepting device.

In the present case we may imply knowledge from the defendant's conduct, since he made statements to the kidnap victim's brother which evidenced a clear recognition that the calls were being taped, but, nonetheless, he continued to speak in apparent indifference to the consequences. In this instance of clear and unequivocal conduct indicating knowledge, the recordings were not made "secretly" and therefore do not constitute an "interception" within the meaning of § 99 B 4. We need not reach the question whether there was "prior authority," for such a consideration arises only if there is a finding that the conversations were recorded secretly.

The interpretation of "interception" which we herein adopt is both consistent with the statutory language and the legislative policy of protecting the privacy of our citizens. Furthermore, it is a sensible approach to look to the caller's words and conduct to determine if a conversation is being intercepted unbeknown to him, for by relying on objective factors we avoid the problems involved in speculating as to the caller's subjective state of mind.

In light of our conclusion that portions of the first and third telephone calls were not "interceptions" under § 99 B 4 because the recordings were not made secretly, we up-

hold the trial judge's denial of the defendant's motion to suppress.

*Order affirmed.*