COMMONWEALTH *vs.* DEMETRIUS ENNIS.

Plymouth. January 9, 2003. - March 27, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Search and Seizure,* Electronic surveillance. *Eavesdropping. Constitutional Law,* Search and seizure. *Evidence,* Telephone conversation, Wiretap. *Imprisonment,* Inmate telephone calls.

An audiotape recording by the Department of Correction of a three-way telephone conversation among an inmate at a house of correction, a criminal defendant, and his codefendant should not have been suppressed where, although the communication in question was an "interception" as defined in G. L. c. 272, § 99 B 4, the department did not wilfully record the inmate's telephone call to the codefendant, announcing to both parties that their conversation would be recorded and affirmatively seeking to prevent any additional party from being added to the two-party conversation; where, by whatever means, the codefendant was able to bypass the feature intended to exclude any additional party from the conversation; and where there was nothing to indicate that the Commonwealth was culpable, or even negligent, and no deterrent purpose would have been served by suppressing the intercepted conversations. [67-70]

INDICTMENT found and returned in the Superior Court Department on February 22, 2000.

A pretrial motion to suppress evidence was heard by *John A. Tierney,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Cordy,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

*Craig S. Havel* (*Jon C. Taylor* with him) for the defendant.

MARSHALL, C.J. The issue in this interlocutory appeal is whether an audiotape recording by the Department of Correction (department) of a three-way telephone conversation among

an inmate at the Plymouth County house of correction, the defendant and a codefendant must be suppressed pursuant to G. L. c. 272, § 99 P,[1] where the inmate and the codefendant knew that the conversation was being recorded, but the defendant did not. We conclude that the recording need not be suppressed.

1. *Background.* On February 22, 2000, a grand jury in Plymouth County returned an indictment against the defendant, Demetrius Ennis, charging him with murder in the first degree. On July 16, 2001, Ennis filed a motion to suppress the audiotape recording, which contained allegedly incriminating statements. A Superior Court judge allowed the motion and suppressed the recording. The Commonwealth took an interlocutory appeal, and we transferred the case here on our own motion.

2. *Discussion.* We first summarize the relevant uncontested findings of the motion judge. On December 28, 1999, the victim was found shot to death in the trunk of his automobile. During the ensuing investigation, the police learned of a telephone conversation that had taken place on the same day among Steven Knight, Jaear Williams, and Ennis. At the time, Knight was an inmate in the Plymouth County house of correction, and the telephone call was recorded pursuant to 103 Code Mass. Regs. § 482.07(3)(d) (1993) ("All inmate telephone calls, except calls to pre-authorized attorney telephone numbers are subject to telephone monitoring").

Knight placed two collect telephone calls to Williams that day. See 103 Code Mass. Regs. § 482.07(3)(a) (1993) ("All inmate calls shall be one-way collect calls only, utilizing an automated operator"). Williams's girl friend answered the first call, heard a recorded message, and then handed the telephone to Williams. After a brief conversation with Knight, Williams tried to add Ennis to the telephone call, but the call was disconnected. See note 2, *infra.*

Knight then telephoned Williams a second time. Williams's girl friend again answered the telephone, but this time, both Williams and Knight heard an automated announcement to the effect that a collect telephone call was being placed by an

---

[1]General Laws c. 272, § 99, is the Massachusetts wiretap act (wiretap act). Subsection P governs the circumstances in which a criminal defendant may move to suppress "the contents of any intercepted wire or oral communication or evidence derived therefrom." See note 7, *infra.*

inmate, that the call was being recorded, and that the call would disconnect if the recipient attempted to activate a three-way or conference call feature. See 103 Code Mass. Regs. § 482.07 (3)(f) and (g) (1993).[2] After Williams accepted the call and despite the warning, he was able to add Ennis to the conversation, presumably using a telephone conferencing feature.[3] As a result, Ennis did not hear the automated announcement, and it is undisputed that he did not know that his communications were being recorded.

Williams and Ennis are codefendants in the underlying murder case. In allowing Ennis's motion, the judge "deem[ed] the interception of the telephone conversation unlawful" because, he ruled, there was no evidence that Ennis knew that the conversation was being recorded. See *Commonwealth* v. *Gonzalez*, 426 Mass. 313, 315 (1997), quoting *Commonwealth* v. *Blood*, 400 Mass. 61, 66 (1987) ("secret transmission or recording of oral communications without the consent of *all* parties is generally proscribed by § 99" [emphasis in original]); *Commonwealth* v. *Jackson*, 370 Mass. 502, 507 (1976) (recording is "secret" if party does not have "actual knowledge of the recording"). The Commonwealth concedes that the recording at issue was an "interception,"[4,5] but contends that the

---

[2]Title 103 Code Mass. Regs. § 482.07(3)(f) (1993) provides: "All inmate telephone calls require positive call acceptance by the called party prior to the call being connected. The telephone system shall use a pre-recorded name to announce who the call is from."

Title 103 Code Mass. Regs. § 482.07(3)(g) (1993) provides: "All inmate telephone calls shall contain a pre-recorded announcement identifying that the collect call is originating from an inmate at a Massachusetts Department of Correction (institution) and indicate that the call is subject to being recorded and that any attempt to access a three party line or conference call will cause the system to immediately disconnect the call."

[3]The transcript of the telephone call states "[p]hone ringing (for three way call)," just after Williams tells Knight to "hold on, hold on."

[4]The term "interception" is defined in G. L. c. 272, § 99 B 4, which provides, in pertinent part: " '[I]nterception' means to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication." An "intercepting device" is defined, in pertinent part, as "any device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire or oral communication." G. L. c. 272, § 99 B 3.

[5]Modern technology has made routine the sequential adding of additional

department did not "unlawfully" intercept Ennis's statements because it did not do so "willfully." See G. L. c. 272, § 99 C 1.[6] We agree.

Section 99 P of the Massachusetts wiretap act, G. L. c. 272, § 99, provides that a criminal defendant may "move to suppress the contents of any intercepted wire or oral communication or evidence derived therefrom," but only in circumstances enumerated in the wiretap act. Ennis relies on three grounds for suppression, G. L. c. 272, § 99 P 1, 2, and 5, and we must therefore determine whether the communication was "unlawfully intercepted," G. L. c. 272, § 99 P 1, or was "not intercepted in accordance with the terms of this section," G. L. c. 272, § 99 P 2, or whether the recording was "illegally obtained," G. L. c. 272, § 99 P 5.[7,8]

The wiretap act does not explicitly define these terms, but

parties to a two-party telephone call, a development apparently not contemplated by the wiretap act. Order-by-telephone retailers, telemarketers, and financial institutions, among others, commonly record telephone calls after first informing the person answering the telephone that the call may be recorded. The announcement of the recording may be, as in this case, automated. The party receiving the telephone call hears the announcement, but may then add a third party without the knowledge or consent of the person making the recording. Because the Commonwealth does not dispute the issue, we need not decide whether a person recording a telephone call (here the department) commits an "interception" where the original parties to the call (here Knight and Williams) are informed that the call is being recorded and where the addition of a sequential party (here Ennis) is beyond the recorder's knowledge or control.

[6]General Laws c. 272, § 99 C, provides, in pertinent part: "Offenses. 1. Interception, oral communications prohibited. Except as otherwise specifically provided in this section any person who — *willfully* commits an interception, attempts to commit an interception, or procures any other person to commit an interception or to attempt to commit an interception of any wire or oral communication shall be fined. . . or imprisoned . . . or both . . ." (emphasis added).

[7]General Laws c. 272, § 99 P, provides, in pertinent part: "Any person who is a defendant in a criminal trial in a court of the commonwealth may move to suppress the contents of any intercepted wire or oral communication or evidence derived therefrom, for the following reasons: (1) [t]hat the communication was unlawfully intercepted[;] (2) [t]hat the communication was not intercepted in accordance with the terms of this section . . . (5) [t]hat the evidence sought to be introduced was illegally obtained." The three other enumerated grounds each concern interceptions made pursuant to a warrant, and are not at issue here. See G. L. c. 272, § 99 P 3, 4, and 6.

[8]It is unclear whether, on appeal, Ennis continues to rely on all three

makes clear that a person "intercepting" an oral communication commits an "offense" only when he or she acts "willfully." See note 6, *supra*. This requirement is consistent with the wiretap act's purposes to circumscribe purposeful "electronic eavesdropping," i.e., secret recordings of conversations, except as specifically authorized by the Legislature. In enacting the wiretap act the Legislature sought to curtail two "grave dangers": (1) "the increasing activities of organized crime" and (2) "the uncontrolled development and unrestricted use of modern electronic surveillance devices," which the Legislature termed a danger "to the privacy of all citizens." G. L. c. 272, § 99 A.[9] As to the first, the Legislature determined that to combat organized crime, law enforcement officials should be permitted to engage in electronic surveillance, but only if judicially authorized. See *id.* Second, the Legislature sought to prohibit all "secret" electronic eavesdropping by "private individuals," *id.*,[10] but provided that such conduct is an "offense" subject to criminal sanction only if done "willfully." G. L. c. 272, § 99 C 1. Thus, not every recording of

grounds for suppression. In his brief, Ennis cites to subsections P 1 and P 2 only, but at oral argument, Ennis referenced subsection P 5. Because all three grounds were argued below and because it is the Commonwealth, and not Ennis, pursuing this appeal, we consider all three grounds.

[9]The first version of the wiretap act was enacted in 1920. See St. 1920, c. 558. In 1968, having substantially revised the wiretap act once, see St. 1959, c. 449, § 1, the Legislature further amended the statute, adding the provisions relevant here. St. 1968, c. 738, § 1. The 1968 amendments were introduced in the wake of a study by a special commission on electronic eavesdropping. See Res. 1964, c. 82 (establishing special commission). See also Interim Report of the Special Commission on Electronic Eavesdropping, 1967 Sen. Doc. No. 1469; Interim Report of the Special Commission on Electronic Eavesdropping, 1967 Sen. Doc. No. 1198; Report of the Special Commission on Electronic Eavesdropping, 1968 Sen. Doc. No. 1132.

[10]The special commission's report suggests at least two reasons for the latter concern. First, the commission heard testimony that newly developed inventions, "eavesdropping devices" and "bugs," could be easily concealed and used to monitor private conversations secretly and continuously. 1967 Sen. Doc. No. 1198, at 3. The commission feared that "[a] person with a minimal education in electronics [could] easily install these commercially available devices for purposes of illegally intercepting wire or oral communications." 1968 Sen. Doc. No. 1132, at 6. Second, the commission was informed that New England Telephone and Telegraph Company had been conducting "service observations," during which the company would secretly record private telephone calls to monitor service and customer perceptions of service. See *id.* at 6-7; 1967 Sen. Doc. No. 1198, at 14.

an oral communication without the knowledge of all participants is an "offense," nor is every such recording "unlawful" or "illegal."

In this case, the department did not wilfully record any oral communication of Ennis, secretly or otherwise. The department did wilfully record inmate Knight's telephone call to Williams, announcing to both parties that their conversation would be recorded. But the department affirmatively sought to prevent any additional party from being added to that two-party telephone conversation. See 103 Code Mass. Regs. § 482.07(3)(g) (1993) ("any attempt to access a three party line or conference call will cause the [department's telephone] system to immediately disconnect the call"), and 103 Code Mass. Regs. § 482.07(3)(b) (1993) ("three way or conference calling . . . [is] prohibited").[11] There is no evidence that the department's system failed or that the department could have taken other steps to prevent Williams from including Ennis in the telephone conversation. By whatever means (the record is not clear) Williams was able to bypass the feature intended to disconnect the call.[12] Certainly the department did not "*secretly* record" any part of the result-

---

[11]Ennis argues that the department promulgated the regulatory prohibition on three-way and conference calling "to ensure compliance with [the wiretap act]." To the contrary, the "department promulgated these telephone regulations to prevent inmates from using the telephone system for illegal activities such as planning escapes, organizing drug trafficking, orchestration of criminal activities, solicitations to murder, and fraudulent use of third-party calls or telephone credit cards . . . [and] for the legitimate purpose of improving the security of the Massachusetts correctional system." *Cacicio* v. *Secretary of Pub. Safety*, 422 Mass. 764, 768-770 (1996). See *Gilday* v. *Dubois*, 124 F.3d 277, 280 (1st Cir. 1997), cert. denied, 524 U.S. 918 (1998) (noting that the department telephone system was established in response to increased abuses of the telephone system). The wiretap act imposes no obligation on a person recording a two-party telephone call to prevent affirmatively the addition of third parties by one of the telephone conversation participants.

[12]The motion judge noted that "for some unknown reason, the [telephone] did not disconnect" when Ennis was added to the telephone call. The judge also stated that the "government system . . . did not properly operate" and that Ennis's conversation was recorded "due to the failure of the Commonwealth's system." There is no evidence that the system failed, rather than being bypassed or circumvented in some way by Williams. Nor, even if there was some form of equipment or system failure, is there any evidence to indicate whether it was the department's equipment or system that failed as opposed to some failure on the part of the telephone company's equipment or

ing conversation wilfully. The department informed all of the anticipated parties to the collect telephone call that their communications would be recorded. The wiretap act is not so broad as to impose liability each time an additional party is added to a two-party conversation in circumstances beyond the recorder's knowledge, direction, or control. Because there was no wilful conduct by the department, there was no "unlawful" or "illegal" interception, see G. L. c. 272, § 99 P 1 and 5, Ennis cannot prevail on either of these two grounds.

As to the third ground for suppression claimed by Ennis, as noted above the Commonwealth has conceded that there was an "interception" and does not argue that the interception was "in accordance with the terms of this section." G. L. c. 272, § 99 P 2. General Laws c. 272, § 99 D, sets forth the circumstances in which an "interception" is affirmatively authorized, none of which is relevant to the department's recording in this case. However, even where the recording is an "interception," see note 6, *supra,* and is not "in accordance with" the wiretap act, suppression is not automatically warranted. The exclusionary rule is designed "to deter future police conduct in violation of constitutional or statutory rights." *Commonwealth* v. *Santoro,* 406 Mass. 421, 423 (1990). Ennis's oral communications were caused to be recorded solely because of conduct by Williams. There is nothing to indicate that the Commonwealth was culpable, or even negligent, and "[n]o deterrent purpose would be served by suppressing the intercepted conversations." *Id.*[13]

The order of suppression is reversed.

*So ordered.*

---

system. Notably, the system functioned properly earlier that day, when it disconnected Williams's first attempt to add Ennis to the conversation.

[13]We reject the judge's conclusion that the "[f]uture failure of the [Commonwealth's] telephone system ought to be deterred." As noted above, the record does not establish that the Commonwealth's system "failed" or that "future failure" is within the department's control and could be "deterred."