NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-179

COMMONWEALTH

vs.

LUIS BARBOSA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Superior Court jury found the defendant guilty of rape of a child with force, G. L. c. 265, § 22A, and indecent assault and battery on a person over fourteen, G. L. c. 265, § 13H. The defendant argues his convictions should be reversed because of improperly admitted evidence in violation of the wiretap statute, G. L. c. 272, § 99, and the introduction of evidence which violated the first complaint doctrine. We affirm.

Wiretap statute violation. The defendant asserts that a phone call between himself and the victim was "secretly" intercepted by the victim's mother and that the admission of evidence regarding the phone call violated the wiretap statute. The defendant also claims that his counsel was ineffective for

failing to move to suppress the call and its contents. At trial, the victim testified she called the defendant, and her mother was listening on another telephone. During that telephone call the victim questioned the defendant about his past actions of rape, and the defendant asked why she was "bringing it up now?" She stated that she was "going to tell [her] mother." In response, the defendant said that if she told her mother, the victim would be "breaking [the] family apart." Based on these statements, we can infer that the defendant was not aware the mother was on the phone call and thus that the call was unlawfully intercepted.[1]

The defendant had explicit statutory standing pursuant to the wiretap statute to move to suppress the contents of the intercepted telephone call. Section 99 P states, "Any person who is a defendant in a criminal trial in a court of the commonwealth may move to suppress the contents of any intercepted wire . . . communication or evidence derived therefrom, for the following reasons: 1. That the communication was unlawfully intercepted." G. L. c. 272, § 99 P. Section 99 does not, however, require the suppression

_____

[1] General Laws c. 272, § 99 B 4, defines "interception" as "to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device."

2

of all communications intercepted in violation of its provisions.  See Commonwealth v. Ennis, 439 Mass. 64, 68-69 (2003).  The Supreme Judicial Court held in Commonwealth v. Santoro, 406 Mass. 421, 423 (1990), that where neither the police nor the government are involved in the recording of telephone conversations, "[n]o deterrent purpose would be served by suppressing the intercepted conversations."  There, a private individual "engaged in unlawful activity himself" by "record[ing] the defendant's conversations."  Id.  Likewise, here, the police were not involved in recording the conversation between the victim, her mother, and the defendant.  Thus, we find no error in the admission of the call,[2] nor do we conclude that defense counsel was ineffective for failing to move to suppress the call, which would have been futile.

First complaint.  We next address the defendant's argument that the judge abused her discretion in admitting testimony in violation of the first complaint doctrine.  The first complaint

_____

[2] Nothing in Commonwealth v. Du, 495 Mass. 103 (2024), calls the Santoro decision into question.  The Du decision concerned "the scope of the suppression remedy provided by the wiretap act, G. L. c. 272, § 99 P, when police violate that statute" (emphasis added).  Du, supra at 103.  It emphasized that the Legislature's focus in the statute and in the suppression remedy "was on the protection of privacy rights and the deterrence of interference therewith by law enforcement officers' surreptitious eavesdropping as an investigative tool" (emphasis added).  Id. at 109, quoting Commonwealth v. Rainey, 491 Mass. 632, 643 (2023).

doctrine allows the first person the victim told of an alleged sexual assault to testify to the fact of the first complaint and the details of the disclosure. See Commonwealth v. King, 445 Mass. 217, 218-219 (2005), cert. denied, 546 U.S. 1216 (2006). Generally, the Commonwealth is limited to one first complaint witness.[3] Id. at 242-243.

At trial, the victim testified that approximately one month before the defendant began sexually assaulting her, he started coming into her room in the morning; he would crawl into bed next to her and "spoon" her -- first with his boxers on, and then, naked. The victim testified that she told her mother of the defendant's conduct, but her mother did not take it seriously and did nothing about it. Importantly, the victim's conversation with her mother occurred approximately one month before the defendant began to rape her. The evidence was admitted to establish that the victim never told her mother

---

[3] A trial judge has discretion to permit testimony from a substitute witness in lieu of the Commonwealth's designated first complaint witness if, for example, the designated witness is unavailable or incompetent. See King, 445 Mass. at 243-244. In this case, the first person the victim told was her grandmother, but, by the time of trial, the grandmother was not competent to testify. The trial judge allowed the Commonwealth to substitute the victim's close friend, whom she told about the rape approximately fourteen years after the rape. The defendant does not challenge this designation.

about the sexual assaults.  There was no objection to the admission of this evidence.

Because that testimony was not about a sexual assault, it is not governed by the first complaint rule.  See King, 445 Mass. at 219.  The victim's statements were admitted to show that her mother did nothing about the disclosure and thus was admissible to explain why the victim did not later tell her mother about the sexual assaults.  See Mass. G. Evid. § 413(b) (2025).  Further, the defendant's conduct of "spooning" the victim while naked in her bed was relevant and admissible to show the history of the relationship between the defendant and the victim, and there was no error in its admission.[4]  See Commonwealth v. Centeno, 87 Mass. App. Ct. 564, 567 (2015).  See also Mass. G. Evid. § 404(b)(2).  Nor was the probative value of the testimony outweighed by its prejudicial effect.  See Commonwealth v. Peno, 485 Mass. 378, 386 (2020) (even if evidence of prior bad act relevant, "its prejudicial effect must not outweigh its probative value").

The defendant also contends that the victim's testimony regarding her conversation with a police officer was a violation of the first complaint doctrine.  However, that testimony is not

---

[4] The trial judge, sua sponte, properly provided the jury with limiting instructions regarding the victim's testimony both contemporaneously and in her final instructions.

5

governed by the first complaint doctrine either. See King, 445 Mass. 218-219. Rather, it was admissible because a witness may be rehabilitated after there is cross-examination testimony discrediting her testimony with showings that she fabricated allegations. See Commonwealth v. Kebreau, 454 Mass. 287, 298-299 (2009). During cross-examination, defense counsel questioned the victim's credibility by repeatedly asking her about the conversation she had with the police officer.[5] During the Commonwealth's redirect examination, the victim testified that she told a Medford police officer about the contents of the three-way telephone call with her mother and the defendant. She did not provide any details of the disclosure. Thus, we conclude there was no substantial risk of a miscarriage of justice because this evidence provided no details of the alleged sexual encounters and was admitted to rebut the inferences made by the cross-examination. See Commonwealth v. Roby, 462 Mass. 398, 409 (2012).

Lastly, the defendant argues that the testimony by the victim and the mother regarding disclosures that the victim made just before the telephone call with the defendant were in

---

[5] Additionally, counsel attempted to elicit that the victim told the officer she was concerned about getting pregnant when the rapes took place, thereby attempting to impeach the victim's earlier testimony where she stated that she did not know what sex was.

6

violation of the first complaint doctrine.  During that conversation, the victim told the mother what the defendant "did to [her]."  We agree that this testimony should not have been admitted because it was cumulative first complaint testimony.  See Commonwealth v. Murungu, 450 Mass. 441, 447-448 (2008).  The defendant did not object to this testimony, thus any errors in its admission are reviewed for a substantial risk of a miscarriage of justice.  See Commonwealth v. McCoy, 456 Mass. 838, 845-846 (2010).

There was no substantial risk here, as the prosecutor interrupted the victim before she was able to testify to any details of the conversation.  Further, the mother's testimony focused on what the defendant was asking her, such as why the victim had stopped coming by the house.  The mother then stated that the victim disclosed the prior sexual abuse by the defendant.  We conclude that no substantial risk of a miscarriage of justice occurred where this testimony was brief and provided no explicit details of the alleged sexual abuse.  See Roby, 462 Mass. at 409.  The evidence also "could have been

7

viewed as inherently biased" because the victim and mother "were making claims against the defendant."  Id.

Judgments affirmed.

By the Court (Massing,
  Englander & D'Angelo, JJ.[6]),

*Paul Little*

Clerk

Entered:  May 19, 2025.

---

[6] The panelists are listed in order of seniority.