NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13842

COMMONWEALTH  vs.  SCOTT M. GRIMALDI.


Hampden.     February 4, 2026. – June 2, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
Dewar, & Wolohojian, JJ.


Motor Vehicle, Operating under the influence.  Evidence, Field
    sobriety test, Videotape, Wiretap, Intent.  Intent.
    Practice, Criminal, Motion to suppress.



Complaint received and sworn to in the Springfield Division
of the District Court Department on March 15, 2024.

A pretrial motion to suppress evidence was heard by Robert
T. Santaniello, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Gaziano, J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by him to
the Appeals Court.  The Supreme Judicial Court on its own
initiative transferred the case from the Appeals Court.


Travis H. Lynch, Assistant District Attorney, for the
Commonwealth.
Kyle J. DeSousa (Brandon A. Parrelli also present) for the
defendant.

GAZIANO, J.  In this case, we examine whether audio-visual recordings of defendant Scott Grimaldi, made by State police troopers using body-worn cameras, violated the wiretap statute, G. L. c. 272, § 99 (§ 99).  While driving his truck, the defendant was stopped at a sobriety checkpoint operated by State police in Springfield.  At a secondary screening area, troopers recorded the defendant's unsuccessful attempts at performing field sobriety tests.  He was subsequently arrested for operating a motor vehicle while under the influence of intoxicating liquor, in violation of G. L. c. 90, § 24 (1) (a) (1).

The defendant moved to suppress the body-worn camera recordings under the wiretap statute, asserting that he had no knowledge that he was being recorded until after his arrest.  A District Court judge allowed the defendant's motion to suppress, holding that the recordings violated the wiretap statute.  After the Commonwealth's application for leave to appeal from the suppression order was allowed, we transferred the Commonwealth's appeal to this court on our own motion.

For the reasons that follow, we hold that the troopers did not "willfully commit[] an interception . . . of any . . . oral communication."  G. L. c. 272, § 99 C 1.  Accordingly, we reverse the motion judge's suppression order.

1.  Background.  a.  Facts.  "We recite the facts as found by the motion judge following an evidentiary hearing on the defendant's motion to suppress, supplemented by undisputed testimony not inconsistent with those findings, and by our independent review of [the] body-worn camera video footage admitted in evidence" (citations omitted).  Commonwealth v. Robinson, 497 Mass. 156, 157 (2026).  See Commonwealth v. Clarke, 461 Mass. 336, 341 (2012) ("we are in the same position as the [motion] judge in viewing the videotape" [citation omitted]).

On March 14, 2024, the State police established a sobriety checkpoint on Page Boulevard in Springfield.  At approximately 11:30 P.M., the defendant pulled his black pickup truck into the checkpoint.  After noticing the smell of alcohol, the defendant's slurred speech, and his glassy eyes, a trooper directed the defendant to the checkpoint "pit" -- a separate screening area where troopers further assessed drivers suspected of being impaired.  In the immediate vicinity of the area where drivers were directed into the pit, there was a "big," "orange or yellow," and "highly reflective" sign saying "something along[] the line of 'Checkpoint, video and audio recording.'"[1]

---

[1] The troopers testified about the characteristics and general location of the sign but were unable to place the sign at a precise location.  No image of the sign was entered as an exhibit.

The pit, which was located in a parking lot directly off the main roadway, was illuminated by bright floodlights, including light fixtures mounted to the exterior of a large State police vehicle used for postarrest booking procedures.  The pit was populated with marked State police cruisers and at least twelve uniformed troopers.

The troopers created audio-visual recordings of the defendant using body-worn cameras, which were attached to their jackets, were openly displayed at chest level, and had red lights visible when recording.  Troopers recorded the defendant from the time he stopped his vehicle in the pit to the time they arrested him.  During that time, the defendant was not orally informed that he was being audio-visually recorded, and the judge found that there was no evidence presented that the defendant actually saw the sign or had his attention directed to it.[2]

---

[2] The State police's policy on body-worn cameras stated:

> "[Body-worn camera] members shall make every effort to inform civilians that they are being recorded at the earliest opportunity unless there is an immediate threat to the member's life or safety, making [body-worn camera] notification impossible or dangerous.  [Body-worn camera] members should make every effort to notify civilians with language such as 'Ma'am/Sir, I am advising you that our interaction is being recorded.'"

State police General Order No. ADM-35 (Mar. 2, 2021).  Given that, here, a violation of the State police policy would not change our analysis, see infra, we take no position whether the

The recordings captured Troopers Sean Clark and Sarah Cantwell, both wearing body-worn cameras, administering two field sobriety tests to the defendant while in the pit.[3] First, the defendant performed the nine-step "walk and turn" test, for which he was instructed to walk in a straight line. During this test, Cantwell stood immediately to the defendant's left. Clark stood ten to fifteen feet to the right of the defendant, removed the body-worn camera from his chest, held the device near his torso, and pointed it toward the defendant to record his feet. Clark held the body-worn camera in this position for the entirety of the "walk and turn" test, which lasted approximately forty seconds.

Second, the defendant performed the "one-leg stand" test, during which Clark no longer held the body-worn camera but instead reattached it to the outside of his jacket. During this test, both troopers remained facing the defendant and stood several feet away from him -- Cantwell to the defendant's left and Clark to the defendant's right. Following the second test, the defendant was arrested.

_____

sign sufficed to "inform civilians that they [were] being recorded."

    [3] The Commonwealth entered the body-worn camera recordings of Clark and Cantwell as exhibits.

b. <u>Procedural history</u>. The defendant was charged in the District Court with operating a motor vehicle while under the influence of intoxicating liquor, G. L. c. 90, § 24 (1) (a) (1). Prior to trial, the defendant filed a motion to suppress the troopers' body-worn camera recordings, arguing that the troopers violated the wiretap statute by failing to advise him that he was being audio-visually recorded. In support, the defendant submitted an affidavit in which he averred that he was not informed that he was being recorded, did not give his permission to be recorded, and did not know that he had been recorded until he was brought back to the State police barracks.

Following an evidentiary hearing, the motion judge issued a decision on February 10, 2025, finding that "the defendant was not reasonably put on notice of any recording." Accordingly, the motion judge concluded that the troopers' use of the body-worn cameras in this case violated § 99, and allowed the defendant's motion to suppress.

The Commonwealth filed an application in the county court pursuant to Mass. R. Crim. P. 15 (a) (2), as amended, 476 Mass. 1501 (2017), seeking leave to pursue an interlocutory appeal from the suppression order, which was allowed by the single justice. We then transferred the case to this court on our own motion.

2. Discussion. "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings absent clear error . . ." (citation omitted). Commonwealth v. Morris, 492 Mass. 498, 502 (2023). "A finding [of fact] is clearly erroneous when there is no evidence to support it, or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (quotation and citation omitted). Commonwealth v. Karen K., 491 Mass. 165, 169 (2023). We conduct an independent review of both video footage and the "ultimate findings and conclusions of law" (citation omitted). Morris, supra. Likewise, questions of statutory interpretation are considered de novo. Id. at 502-503.

It is a crime under the wiretap statute to "willfully commit[] an interception . . . of any . . . oral communication." G. L. c. 272, § 99 C 1. A person commits an "interception," as that term is defined in the statute, when he or she "secretly record[s] . . . the contents of . . . oral communication through the use of any intercepting device" without "prior authority by all parties to such communication." G. L. c. 272, § 99 B 4.[4] In

---

[4] Because we ultimately conclude that the troopers did not "willfully" commit an interception, we need not decide whether the troopers secretly recorded. See G. L. c. 272, § 99 B 4. See also Commonwealth v. Jackson, 370 Mass. 502, 505 (1976), S.C., 391 Mass. 749 (1984).

turn, an "intercepting device" includes "any device or apparatus which is capable of transmitting, receiving, amplifying, or recording . . . oral communication." G. L. c. 272, § 99 B 3. As we have said, "[a] body-worn camera is an intercepting device." Commonwealth v. Rainey, 491 Mass. 632, 637 (2023).

A criminal defendant whose oral communications have been intercepted in violation of the wiretap statute "may move to suppress the contents of any intercepted wire or oral communication or evidence derived therefrom." G. L. c. 272, § 99 P. Where an audio-visual recording of the defendant's oral communication violates the statute, both the visual and audio components of the recording must be suppressed. See Commonwealth v. Du, 495 Mass. 103, 104 (2024).

Suppression is warranted under the wiretap statute where an interception was committed "willfully." G. L. c. 272, § 99 C 1. See Commonwealth v. Boyarsky, 452 Mass. 700, 707 (2008). While the statute does not define the term "willfully," we have said in other contexts that "[w]ilful conduct is that which is 'intentional rather than accidental.'" Commonwealth v. Brennan, 481 Mass. 146, 154 (2018), quoting Commonwealth v. McDonald, 462 Mass. 236, 242 (2012). As such, we will find a violation of the wiretap statute when an interception -- defined as a "secret[] record[ing]" -- is committed intentionally rather than accidentally. That is, willfulness requires not merely an

intent to record, but rather an intent to secretly record --
i.e., an intent to record someone without their knowledge.  See
Commonwealth v. Ennis, 439 Mass. 64, 66 (2003).  See also id. at
69-70 ("Certainly the department did not 'secretly record' any
part of the resulting conversation wilfully").

Here, the record forecloses any conclusion that the
troopers willfully committed an interception.  First, regardless
of whether the defendant saw the sign warning drivers that they
were being recorded, the use of the large, reflective roadside
sign at the checkpoint demonstrates that the troopers intended
to, and did, notify motorists that they were being audio-
visually recorded.  Additionally, on the facts of this case, the
troopers' open use of the body-worn cameras indicates that they
did not intend to secretly record the defendant.  Specifically,
the body-worn cameras were attached to the chest of the troopers
at the checkpoint and had visible red lights displayed when in
operation.  Moreover, Clark, who was standing ten to fifteen
feet away from the defendant, openly used his body-worn camera
as a handheld device during the "walk and turn" test.  He
detached the camera from his jacket and pointed it directly at
the defendant's feet to record the defendant's movements during
the test.  And while the recordings took place at night, the pit
was illuminated by bright floodlights, underscoring that the

troopers did not intend to conceal their use of the body-worn cameras.

The defendant contrasts this case with Boyarsky, 452 Mass. 700, and Ennis, 439 Mass. 64, arguing that the interceptions here were committed willfully. Both cases involved recorded telephone calls from correctional facilities in which the first person to pick up the telephone heard an automated warning that the call was being recorded, while a third party who subsequently participated in the call did not hear this warning. See Boyarsky, supra at 704, 706; Ennis, supra at 65-66. In both cases, we reasoned that "where the department could not have taken steps to prevent the [third party] from joining the call . . . the department did not 'willfully' intercept the call." Boyarsky, supra at 706-707, citing Ennis, supra at 67-70. In other words, the alleged interceptions were not committed willfully because "[t]here [was] no evidence that those responsible at the [correctional facilities] for recording calls had any knowledge that the initial recipient of the . . . telephone call had passed the telephone to someone else, and no evidence in any event that the [correctional facility] had any power to prevent such an occurrence." Boyarsky, supra at 707.

The defendant argues that here, the troopers had knowledge that the defendant did not read the sign notifying drivers that

they were being recorded.[5]  The defendant contends that, along with this knowledge, the troopers had the power and control to remedy the defendant's ignorance.  More specifically, the defendant suggests that the troopers should have followed their departmental policy, which required them to inform individuals that they are being recorded.  As such, the defendant argues that this case is distinguishable from Boyarsky and Ennis because here, the troopers had "knowledge, power, and control," meaning the alleged interception was committed willfully.  See Boyarsky, 452 Mass. at 707 ("the absence of knowledge, power, and control on the jail's part signifie[d] that the interception[s] could not [have been] deemed wilful").

We acknowledge that there are factual differences between this case and Boyarsky and Ennis.  Yet, similar to those cases, the State police troopers here made affirmative efforts to ensure that parties being recorded were aware of that fact.  See Ennis, 439 Mass. at 69.  Specifically, the troopers sought to notify drivers that they were being recorded when they entered the sobriety checkpoint using a bright, highly reflective sign that warned drivers that they were being audio-visually recorded.  Just as the third parties' ignorance of the warnings

---

[5] The checkpoint greeter, speaking over the radio, announced, "Obviously, [the defendant] doesn't pay attention to signs," a comment that appeared to be in response to the defendant's failure to stop immediately.

in Boyarsky and Ennis did not render the alleged interceptions "willful," the defendant's purported ignorance of the prominent sign here cannot render any purported interception "willful." And even if the troopers had reason to believe that the defendant never saw the sign, the troopers' use of the body-worn cameras in a brightly lit area, including Clark's removal of the device from his chest and pointing of it directly at the defendant's feet during the "walk and turn" test, forecloses the conclusion that they intended to secretly record the defendant.

Even if the troopers failed to conform to State police policy because they knew that, despite the sign at the checkpoint entrance, the defendant did not know he was being recorded, the failure did not render the interception willful given the compelling evidence that the troopers here did not intend to commit an interception.[6]

---

[6] The defendant argues that the troopers' violation of the State police policy demonstrates that the interception was committed willfully. We disagree. To the extent that the troopers failed to abide by written policy, such a failure is not an independent ground for suppression under § 99 P. To be sure, in some instances that implicate a defendant's constitutional rights against unreasonable searches and seizures, noncompliance with a written policy can lead to suppression. See Commonwealth v. Barillas, 484 Mass. 250, 257-259 (2020) (exclusion of evidence required if inventory search not conducted pursuant to written procedures, limiting police discretion to conduct warrantless general search); Commonwealth v. Morales, 462 Mass. 334, 343 n.9 (2012) (compliance with written policy concerning when and how to conduct visual body cavity search and strip search is factor in determining reasonableness of search). Violations of the wiretap statute,

3.  Conclusion.  Because the troopers did not commit a willful interception under the wiretap statute, we reverse the motion judge's allowance of the defendant's motion to suppress.

So ordered.

---

by contrast, are not constitutional inquiries that turn on an individual's reasonable expectation of privacy.  See Jackson, 370 Mass. at 506.